[Civ. No. 6357.   Fourth Dist.   Nov. 2, 1960.]

CITY OF BUENA PARK, Respondent, v. LOUIS H. BOYAR et al., Appellants.

62

Horowitz & Howard and Fred Horowitz for Appellants.

James F. Judge for Respondent.

GRIFFIN, P. J.—Plaintiff and respondent, city of Buena Park, a municipal corporation of the sixth class, brought this action against defendants and appellants Louis H. Boyar, subdivider, and certain named corporations, owners of land in Buena Park, upon a contract, an undertaking and a bond executed by defendant and appellant General Casualty Company of America, seeking a judgment of $50,000 claimed due under them. (Unless otherwise stated, references to defendants shall exclude appellant General Casualty Company of America.) Defendants were desirous of subdividing a tract upon which they intended to construct homes. Pursuant to the Subdivision Map Act (Bus. & Prof. Code, § 11500 et seq.), they sought to have the map of Tract 2539 approved. Plaintiff city imposed certain conditions to such approval. These conditions included the installation of streets, curbs, gutters, sidewalks, etc. In addition, they demanded, as a condition precedent to such subdivision map approval, that defendants pay certain sums plus $50,000 to be spent by the city to construct an open drainage ditch or a concrete pipe from Tract 2236 (which tract adjoins Tract 2539 on the north) to the Fullerton

Relief Channel. The open drainage ditch or concrete pipe was intended to provide drainage for land south and east of Tract 2539 as well as Tract 2236. Defendants executed the undertaking sued upon and it is dated April 22, 1955, and the map was approved May 10, 1955. All required work was done by the subdivider and all payments made except the payment of the $50,000. By the terms of said undertaking, the city agreed to accept for recordation in Orange County the subdivision map of defendants' Tract 2539, to cause to be affixed thereto the signatures of the authorized agents of the city and to accept the dedication of the streets, alleys and easements in the tract. The particular obligation of defendants here sought to be enforced is contained in paragraph 10 of said contract reading as follows:

"Upon demand by the City the subdivider shall pay to the City the sum of $50,000 which sum shall be spent by the City for the purpose of constructing either:

"(1) An open drainage ditch running northwesterly from Tract 2236 to the Fullerton Relief Channel, or

"(2) A suitable concrete pipe from Tract 2236 running North on Stanton Ave. to the Fullerton Relief Channel.

"In the event that the City determines within nine months that it is not practical to construct the open ditch, then the City will immediately take steps to build the concrete pipe.

"In the event that an open ditch is practical, the City will commence action to construct same within 18 months of the date of this undertaking.

"It is understood that the $50,000 shall be spent on the cost of the project which is defined as all direct and indirect, legal, engineering, and rights of way costs which may be incurred by the City.

"In the event that the City of Buena Park constructs the concrete pipe in Stanton Avenue and the cost of such construction is less than $50,000, then the City of Buena Park shall reimburse to the subdivider the difference between $50,000 and the cost of the construction."

The city had nine months from April 22, 1955, under paragraph 10 of the contract, to decide whether the drainage would be by means of concrete pipe or an open drainage ditch. This decision was timely made in December 1955. It was then obligated to commence construction of the open ditch within 18 months of the contract date, and the work was so commenced by the city on October 20, 1956. On May 21, 1957, seven months from the time of the commencement of work, plaintiff had

caused to be constructed approximately 60 per cent of the open ditch to Western Avenue. This point was about one-half mile from defendants' tract of land, to which the contract contemplated the ditch would ultimately reach. The city let out to bid the 60 per cent portion and it was completed and accepted on February 26, 1957. At that time the city wrote defendant that the city had constructed the open drainage structure at a cost of $64,582.04 and demanded the $50,000 in question. Apparently the defendants refused to pay this sum because the ditch was not in fact fully completed. On August 5, 1957, this action was brought in Orange County and subsequently transferred to Riverside County (Code Civ. Proc., § 394) and trial was had on May 20, 1959, on an agreed statement of facts and other evidence.

The trial court found generally in accord with the facts stated; that the city had constructed a reasonable portion of the entire drainage ditch within the time required and defendant owners, at the time demand was made, had received substantial performance by the city of their undertaking and agreement and it was their duty and obligation to pay over to the city the $50,000. It then found that this sum, at the time of demand and presently, was and now is *"absolutely and unconditionally"* owing by Defendants to Plaintiff," but, in the interest of justice and pursuant to the offer of the plaintiff city, said sum should be impounded "until proof be made to this court that the existing drainage ditch has been extended from Western Avenue easterly to the intersection of Page and Stanton Avenues . . ." (the one-half mile portion not completed).

It then gave a definite judgment, as follows:

"1. That Plaintiff do have and recover from the Defendants and each of them, the sum of $50,000.

"2. That said sum be paid to, and impounded by, the Clerk of the above-entitled Court, to be held by said Clerk, until proof be made to this Court that the open drainage ditch has been extended easterly from Western Avenue to the intersection of Page and Stanton Avenues, in the City of Buena Park, California."

■■■ Respondent, on appeal, first argued that the judgment is interlocutory in character and form and not appealable and moved this court for dismissal of the appeal. At first blush it might appear that the judgment was not final, but when analyzed as to its definiteness we conclude that as far as defendants-appellants are concerned it is definite and certain.

Under the agreement, when demand was made, this sum was due and owing to the city and the court so found. The completion of the work was not made a condition precedent of defendants' duty to pay the $50,000 under the terms of the contract. Execution could properly be issued on the judgment. The court, however, declared it should not be paid over to plaintiff city until the work was completed. The city has not appealed from this portion of the judgment. In fact, this order was made at the city's suggestion. Defendants cannot be heard to complain as to this condition which was made for their benefit and protection in case the city breached its contract and the defendants obtained judgment against the city for any damage suffered. The judgment did not specify that the moneys held by the clerk would be returned to defendants at a subsequent time, after hearing by the court, but only provided it would be impounded in the interests of justice and turned over to plaintiff city if it completed its obligations under the contract. ■ Orders requiring the payment of money by the party complaining, or the doing of an act by or against him are usually regarded as final as against such party and may be appealed from by him. (*Fish* v. *Fish*, 216 Cal. 14, 16 [13 P.2d 375] ; *Meehan* v. *Hopps*, 45 Cal.2d 213, 217 [288 P.2d 267] ; *Phillips* v. *Cleaver*, 82 Cal. App.2d 751, 753 [187 P.2d 80].)

■ Appellants contend that the respondent city failed to complete the drainage ditch within a reasonable time and that this failure was willful and intentional and amounted to a repudiation of the contract. The trial court found that the city was not in default in the performance of its obligations under the contract. While appellants have pointed to some conflicts in the evidence upon this issue, our examination of the evidence indicates that there was substantial evidence to support the findings of the trial court. From an examination of the evidence produced, without setting it forth, it might well appear that the city did agree to use said funds in the construction of the ditch and did agree that the ditch would ultimately reach and serve defendants' property. A repudiation must be shown by conduct of the city that was distinct, unequivocal and absolute. (*Hertz Driv-Ur-Self Stations, Inc.* v. *Schenley Distilleries*, 119 Cal.App.2d 754, 760 [260 P.2d 93] ; *Gold Mining & Water Co.* v. *Swinerton*, 23 Cal.2d 19, 29 [142 P.2d 22].) ■ To justify the adverse party's treating a renunciation as a breach, the refusal to perform must be of the whole contract or of a covenant going

to the whole consideration, and must be strict, unequivocal and absolute. A mere assertion that the party will be unable or will refuse to perform his contract is not sufficient. (12 Cal.Jur.2d, § 248, p. 475.) ▬▬ In the city's brief and in its evidence, it clearly appears that the city does intend to proceed immediately upon such construction when this judgment becomes final. It is conceded that defendants have deposited the $50,000 in the court without waiving their right of appeal. In the light of the evidence, we cannot and do not anticipate that the city would or will breach its agreement. If it should, defendants have their remedy.

▬▬ Appellants next contend that the respondent city's requirement that the developers execute an undertaking of $50,000 to be expended for the construction of a drainage facility as a condition to the approval of a final subdivision map was unreasonable because the planned drainage system would serve areas other than that being developed by appellants. Appellants urge that the requirement of the undertaking was illegally imposed. (Citing *Kelber* v. *City of Upland,* 155 Cal.App.2d 631 [318 P.2d 561].) The attached conditions and requirement for an undertaking in respect to the drainage ditch were not illegal under the decision of *Kelber* v. *City of Upland, supra,* 155 Cal.App.2d 631 [318 P.2d 561], relied upon by defendants. In the first instance, this defense was not raised by the pleadings and was not made an issue under the pretrial conference order. Apparently the question was not raised during the trial and was not brought to the attention of the trial judge for a finding on the question. Ordinarily a question may not be raised for the first time on appeal. (*Ernst* v. *Searle,* 218 Cal. 233, 240 [22 P.2d 715].) There appears to be an exception to this rule, where the plaintiff seeks to enforce an illegal contract. (*Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 147 [308 P.2d 713].)

Secondly, the evidence clearly indicates that the $50,000 was to be paid to the city to be expended for the direct benefit of the subdivision, for drainage purposes, and such drainage facility was sorely needed for the promotion of the subdivision and for the general use of the lot owners in the subdivision. Under Business and Professions Code, section 11500 et seq., cities are given controls over the "design and improvement of subdivisions . . ." (Bus. & Prof. Code, § 11506.) The improvements which a city may so regulate specifically include "drainage needs." An agreement to install improvements "on the land to be used" may be made as a condition precedent to the

approval and acceptance of the final map. (Bus. & Prof. Code, § 11511.) Claim is made that these improvements are not on the land and accordingly the condition cannot be exacted. The drainage ditch was essential to drain the water accumulated on or falling on the land and to carry it from the land to the main drainage channel. The drainage ditch was for the general use of the lot owners in the subdivision and local drainage needs. We conclude that the improvement contemplated was included within the definition. (*Bringle* v. *Board of Supervisors,* 54 Cal.2d 86 [4 Cal.Rptr. 493, 351 P.2d 765].) Business and Professions Code, section 11543.5, now specifically provides that an *equitable* pro rata fee could be required. In consideration of tentative maps, the city may disapprove the subdivision map for "flood hazard and inundation and require protective improvements to be constructed as a condition precedent to approval of the map or maps." (Bus. & Prof. Code, § 11551.5.) [6] One of the main purposes of the Subdivision Map Act is to require the subdivider to install properly the streets and drains under the provisions of that act. (*Hoover* v. *County of Kern,* 118 Cal.App.2d 139 [257 P.2d 492].) The subdividing of land is a privilege to which the Legislature has attached certain conditions. It was stated in *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31, 42 [207 P.2d 1, 11 A.L.R.2d 502] :

"It is the petitioner who is seeking to acquire the advantages of lot subdivision and upon him rests the duty of compliance with reasonable conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public."

With the above statutory authorization, the city could have required the subdivider himself to construct necessary improvements under the Subdivision Map Act, as a condition of approval. Instead, payment of a sum of money, $50,000, was substituted which the city could expend only upon drainage facilities from the intersection of Page and Stanton Avenues to the flood control channel for the benefit of the lots in said subdivision. Whatever the total costs might be, defendants' share was fixed at a maximum of $50,000. The city spent over $64,000 on only a portion of the drainage channel and accepted the responsibility of finding ways and means to complete the entire project. The Kelber case does not hold that a requirement of payment for drainage is illegal. On the contrary, it expressly states that it is legal under the

Subdivision Map Act but that the requirement under the facts of that case was unreasonable. There the fees exacted could be spent anywhere in the city of Upland. In the instant case the drainage ditch to Page and Stanton Avenues, contribution to which was required of defendants, was undoubtedly for the direct benefit of the subdivision in question when considered in relation to it and the adjoining area. The funds could be spent only on the one project. In *Longridge Estates* v. *City of Los Angeles,* 183 Cal.App.2d 533 [6 Cal.Rptr. 900], a similar question arose in reference to sewers. The court held that under an ordinance the power of the city to require a reasonable charge for connection to and use of sewers before final approval of maps is a proper incident to the exercise of the police power of a municipality. We conclude that the point attempted to be raised on this appeal is not meritorious.

Motion to dismiss appeal denied. Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

A petition for a rehearing was denied November 22, 1960, and appellants' petition for a hearing by the Supreme Court was denied December 28, 1960. Peters, J., was of the opinion that the petition should be granted.