98 N.J. Super. 67 (1967)
236 A.2d 154
LONGRIDGE BUILDERS, INC., PLAINTIFF-RESPONDENT,
v.
PLANNING BOARD OF THE TOWNSHIP OF PRINCETON, IN THE COUNTY OF MERCER AND STATE OF NEW JERSEY, AND THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PRINCETON, IN THE COUNTY OF MERCER AND STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 1967.
Decided November 24, 1967.
*68 Before Judges CONFORD, COLLESTER and LABRECQUE.
Mr. Henry A. Hill, Jr. argued the cause for appellants (Mr. Gordon D. Griffin, attorney).
*69 Mr. Peter T. Bacsik argued the cause for respondent (Messrs. McCarthy, Bacsik, Hicks & Dix, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
This is an appeal from Judge Bennett's decision in the Law Division that defendant planning board had no statutory right or ordinance power to condition its approval of plaintiff's subdivision (below and hereinafter referred to as "Point of Woods") on the latter agreeing to pave an off-site, previously dedicated, but as yet unopened road for a distance of 361 feet beyond the subdivision line to Autumn Hill Road, a public thoroughfare to the north of plaintiff's property. The general facts and circumstances are concisely set forth in the trial court's opinion, 92 N.J. Super. 402 (Law Div. 1966), and we refer thereto for purposes of this opinion. However, the report of the case fails to set forth the board's findings on the remand directed by the trial court. Some of those findings are significant and are here recited in material part:
"2. Woods Way extension [the road in question] was required by the Planning Board to be dedicated for public street purposes in connection with the subdivision, in 1956, of property to the north of Point of Woods. This reservation was for the express purpose of affording future access to the lands now forming the northern part of Point of Woods. It was expressly requested by the then owner of said lands, who was the immediate predecessor in title of the present owner thereof.
3. * * * There are approximately 2,650 running feet of new roads within the boundaries of the subdivision and Woods Way extension is 361 feet long.

* * * * * * * *
5. The construction of Woods Way extension is reasonably necessary in the public interest and for the public safety and Welfare, in that it will provide an appropriate continuous extension of existing and mapped streets, thereby implementing planning decisions made in 1956 for the benefit and at the request of the then owner of part of the lands comprised within this subdivision. By providing double access to the subdivision, it will facilitate traffic circulation and service and maintenance of the area, especially in times of emergency (fire and police vehicles and ambulance), and it will accord with the *70 policy of the Board that more than one subdivision access be provided, where feasible.

* * * * * * * *
7. The construction of Woods Way extension will confer some benefit upon the lands to the north of Point of Woods, as well as upon the Point of Woods subdivision itself. The nature of that benefit, for the most part, is such as would accrue to the public generally from any extension of public streets in a subdivision. There would be little or no benefit conferred specially upon the Autumn Hill lots adjacent to the extension, as they already have frontage on an existing public street. The subdivision to the north of Point of Woods would also receive the benefit of double access, as would Point of Woods. However, the subdivision to the north was required to, and did, make a contribution to that double access by dedicating a 50 foot wide, 360 foot long right-of-way for this very extension, in anticipation of the future development of lands now constituting part of Point of Woods. The paving of that extension was properly deferred until that future development actually took place, as the extension would lead to nowhere until that time. Recognizing the difficulty of achieving mathematically precise apportionment of the cost of benefits conferred by subdivision improvements among subdivision developed at various times and the general public, and finding that Woods Way extension will confer a direct and special benefit upon Point of Woods, and being of the opinion that any benefit therefrom to lands to the north will be only incidental, except as to double access for which those lands have already made an equitable contribution in the form of a dedicated right-of-way, the Board finds that it is altogether reasonable and equitable, from the viewpoint of benefit, that the Point of Woods subdivision should bear the cost of constructing Woods Way extension."
To be considered along with the statutory excerpts quoted and cited in the opinion of the trial court is N.J.S.A. 40: 55-1.21. For convenience, that section and N.J.S.A. 40:55-1.20 are here set out together:

40:55-1.20
"In acting upon plats the planning board shall require, among other conditions in the public interest, that the tract shall be adequately drained, and the streets shall be of sufficient width and suitable grade and suitably located to accommodate the prospective traffic, to provide access for fire-fighting equipment to buildings and to be coordinated so as to compose a convenient system, conforming to the official map, or if there is no official map, relating properly to the existing street system. Where the planning board after hearing has adopted portions of the master plan with proposals regarding the street system within the proposed subdivision, the board may require *71 that the street shown conform in design and in width to the proposals shown on the master plan. No street of a width greater than fifty feet within the right-of-way lines may be required unless said street already has been shown on such master plan at the greater width, or already has been shown in greater width on the official map.
The planning agency shall further require that all lots shown on the plats shall be adaptable for the intended purposes without danger to health or peril from flood, fire, erosion, or other menace.
If portions of the master plan contain proposals for drainage rights-of-way, schools, parks, or playgrounds within the proposed subdivision or in its vicinity, or if standards for the allocation of portions of subdivisions for drainage rights-of-way, school sites, park and playground purposes have been adopted, before approving subdivisions the planning board may further require that such drainage rights-of-way, school sites, parks or playgrounds be shown in locations and of sizes suitable to their intended uses. The governing body or the planning board shall be permitted to reserve the location and extent of school sites, public parks and playgrounds shown on the master plan or any part thereof for a period of one year after the approval of the final plat or within such further time as agreed to by the applying party. Unless during such one-year period or extension thereof the municipality shall have entered into a contract to purchase or instituted condemnation proceedings according to law, for said school site, park or playground, the subdivider shall not be bound by the proposals for such areas shown on the master plan. This provision shall not apply to the streets and roads or drainage rights-of-way required for final approval of any plat and deemed essential to the public welfare."

40:55-1.21
"Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or all of the following improvements it may deem to be necessary or appropriate: street grading, pavement, gutters,, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest."
It is defendants' general position that these sections are ambiguous as to whether it was intended thereby that planning boards (or governing bodies when the approval jurisdiction *72 resides there under the particular ordinance) have the right to compel the subdivision developer to provide and improve at its own expense off-site streets, but that appropriate principles of liberal construction of the act in favor of the municipality impel the conclusion that there was such intent. Reliance is had upon the conceded planning desideratum that a new subdivision be fully integrated with the community at large in respect of street circulation. Defendants argue that the planning board has complete discretion in the matter, subject only to the usual prerequisite of administrative reasonableness which it is contended has here been met.
No quarrel can be had with the general planning principles mentioned by the board in its findings, or as to the desirability of the proposed street connection of Point of Woods with Autumn Hill Road to the north. But there nevertheless remains a serious question as to whether the Legislature intended the planning boards to have the scope of control over the allocation of the burden of expense of public street improvements which the Princeton board assumed it had in this case.
Appraisal of the scope of the power asserted is aided by an analysis of what the board here did and a consideration of the extent to which it thereby foreclosed the governing body from exercising its own original governmental jurisdiction. The board first chose to decide in 1956 not to require the developer of the subdivision to the north to pave but only to dedicate the road here involved, although it had the unquestioned power to require the complete improvement since the area was located entirely within that subdivision. Normal planning board procedure would have been to do so. As to the instant subdivision, the board could, of course, have elected not to require plaintiff to pave the road. In that event, since it was too late to impose the cost on the original subdivision to the north as a planning matter, the road would undoubtedly have eventually been publicly improved either as a general municipal improvement or *73 by an assessment for benefits  a determination which would have been exclusively for the governing body, not the planning board. While one cannot say exactly which lands would have been assessable for the benefit from the improvement, it is certain that the burden could not have been exclusively assessed against the lands in Point of Woods with an exemption for the lands to the north of the subdivision line. As the planning board correctly notes, the benefits of the connector road will undoubtedly accrue to the lands north as well as south of the Point of Woods boundary line.
Thus, by making its 1956 decision and that here under attack the planning board has effectively constituted itself the local agency vested with power to determine who should bear the burden of a street improvement  a function appropriately to be exercised only by the governing body.
In explaining why it felt that it was fair and reasonable that plaintiff should bear this paving cost the board unwittingly reflected emphasis upon its assumption of the discretionary authority to act as the sole local arbiter, in the first instance, as to who should stand the cost of improvement of a particular off-site street.
We find nothing in the language, purpose or object of the planning statute to make us think it probable that such transfer to planning boards of the original power and discretion of governing bodies over the determination of the incidence of the cost of street improvements was intended by the Legislature. No such anomalous result arises, on the other hand, if one gives the statute its natural reading to confine the power of the planning boards, in requiring the improvement (and dedication) as well as controlling the location of streets, to those within the boundary lines of the development. There is a clearly justifiable implication of benefit to the entirety of the subdivision itself from the required improvement by the developer of streets therein. See West Park Ave. Inc. v. Ocean Tp., 48 N.J. 122, 126 (1966). No assessment for benefit power, as such, is vested in the planning board by the statutory authorization *74 for its requiring the developer to stand the entire cost of improving streets within the subdivision. The decision as to compensating benefits has been made by the Legislature; the planning board is but the enforcement arm of the legislative policy in that regard.[1]
There is no particular profit in close analysis of the language of the statute for clues as to legislative intent in the regard under dispute. There is nothing therein which expressly or by very clear implication allows or disallows the imposition of a condition of off-site street improvement.[2] Compare Medine v. Burns, 29 Misc.2d 890, 208 N.Y.S.2d 12, 14 (Sup. Ct. 1960), where the statute confined the jurisdiction to streets "shown on" the plat. Insights as to the legislative intent must therefore here be sought from the general purposes and objects of planning as reflected by the statute, the place of planning boards in the general statutory scheme, and presumptive legislative concepts as to a proper balance of function as between planning boards and governing bodies in relation to assessment of benefits for street improvements, direct or indirect. This has been the approach that has led us to the conclusions stated above.
*75 In the comprehensive analysis of the statutory scheme set forth in Levin v. Livingston Tp., 35 N.J. 500 (1961), the court impliedly recognized the prima facie import of the statute as confining the planning board's jurisdiction to streets within the subdivision when it said:
"The intent to give wide and strong municipal authority is clear. The only precise limitations are found in N.J.S.A. 40:55-1.15, requiring that the ordinance contain standards for approving the design of subdivisions and of the streets therein * * *." (at p. 510; emphasis ours.)
An entirely different situation would be presented if there were no public street access to the subdivision at all under the plat submitted. Compare Noble v. Chairman and Members of Tp. Com. of Mendham Tp., 91 N.J. Super. 111 (App. Div. 1966), where a planning board was upheld in requiring the developer to improve a road facing on the subdivision and constituting the only public access thereto, in the light of the requirements of the Official Map and Building Permit Act (N.J.S.A. 40:55-1.30, 1.39) taken together with the "among other conditions in the public interest" clause in the first sentence of N.J.S.A. 40:55-1.20. Cf. Mac Lean v. Planning Bd. of Brick Tp., 94 N.J. Super. 288, 290-291 (App. Div. 1967). See the similar result in comparable circumstances in Town of Stoneham v. Savelo, 341 Mass. 456, 170 N.E.2d 417, 418-419 (Sup. Jud. Ct. 1960); also City of Sierra Madre v. Superior Court, 191 Cal. App.2d 587, 12 Cal. Rptr. 836 (D. Ct. App. 1961).
Moreover, we are not here called upon to decide whether a planning board might not in a sufficiently egregious case of insufficient (as contrasted with no) street access to a development unconditionally deny approval of the subdivision as submitted as being inadequate in respect of circulation within the community at large.
We do not here go beyond the subject of street improvements. It is entirely conceivable that a broader approach might have to be entertained in relation to drainage or the *76 provision of water or sewerage facilities, for example. These essentials for a residential subdivision might in some circumstances call for off-site operations to produce acceptable on-site conditions. And those might possibly be within the contemplated board's discretion to require of the developer, a point we have no occasion here to determine. In relation to drainage, see City of Buena Park v. Boyar, 186 Cal. App.2d 61, 8 Cal. Rptr. 674 (D. Ct. App. 1960).
Our construction of the statute being determinative against defendants, we need not consider the sufficiency of the standards set forth in the local ordinance to permit the disputed exercise of jurisdiction by the planning board.
Judgment affirmed.
NOTES
[1] This policing function is to be contrasted with the broad administrative discretion permissibly vested in planning boards in controlling the number, location and design specifications of streets within the subdivision in accordance with the criteria set forth in statutory sections N.J.S.A. 40:55-1.15, 1.20 and 1.21 or in implementing ordinances.
[2] No confident implications as to the issue can be drawn from the second sentence of N.J.S.A. 40:55-1.20 which reads: "Where the planning board after hearing has adopted portions of the master plan with proposals regarding the street system within the proposed subdivision, the board may require that the street [sic] shown conform in design and in width to the proposals shown on the master plan." (Emphasis ours)

But note that the same section refers to master plan proposals for drainage rights of way, schools, parks or playgrounds "within the proposed subdivision or in its vicinity," to permissive planning board power to require locations therefor to be shown on the plat and to the right of the municipality to buy or condemn such locations (except as to drainage rights-of-way) within one year after final approval of the plat.