122 N.J. Super. 508 (1973)
300 A.2d 883
DIVAN BUILDERS, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
PLANNING BOARD OF THE TOWNSHIP OF WAYNE AND MAYOR AND COUNCIL OF THE TOWNSHIP OF WAYNE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided February 13, 1973.
*511 Messrs. Corrado, Corcoran & Sokalski, attorneys for plaintiff (Mr. Ronald Sokalski appearing).
Messrs. Hunziker, Hunziker & Stein, attorneys for defendant Planning Board (Mr. Kenneth S. Stein appearing).
Mr. Michael C. Rudolph, attorney for defendant Mayor and Council.
SCHWARTZ, L., J.D.C., Temporarily Assigned.
Plaintiff, an applicant for final subdivision approval, brought this action against the governing body and the Planning Board of Wayne Township to recover the sum of $20,000 which it was required to contribute towards the construction cost of an off-site municipal drainage facility as a condition precedent to receiving approval.
The facts, as stipulated in this case, are that preliminary subdivision approval had been granted to plaintiff by the *512 Planning Board of Wayne Township in 1970 for a tract of land to be divided into 31 lots. A substantial portion of the premises was covered by a pond in which water had been temporarily withheld before it flowed from the premises by a conduit. The developer's plans, approved by the municipal engineer and the planning board, called for the draining of the pond and the piping of water as it entered the premises from upstream, so that it flowed through the development and into the previously existing drainage facility on its downstream border.
In 1972 the municipality adopted an amendment to its subdivision ordinance known as ordinance 69. Among other matters, it provided as a condition precedent to subdivision approval, site plan approval and issuance of building permit, that applicants post performance bonds or make cash payments towards off-site public improvements in whole or in part made necessary by the applications. An allocation of costs was provided depending upon the extent of benefit conferred on the plots which were the subject of the applications, the cost of the improvement, the extent to which the facility was made necessary to protect neighboring properties as the result of the proposed plans and other conditions later adverted to in this opinion.
When plaintiff subsequently applied for final subdivision approval, in accordance with ordinance 69 the planning board imposed a condition precedent that it make payment of $20,000 representing its allocation toward the cost of a $250,000 off-site drainage system the municipality planned to construct. The system would accommodate the increased run-off from plaintiff's property as well as drainage from neighboring properties and properties located downstream in the drainage basin.
In order to secure approval plaintiff delivered the sum of $20,000. A similar payment was made by a neighboring developer who had applied for site plan approval.
The established policy of the municipality is to impose a required contribution from each of the undeveloped properties *513 in the drainage basin in accordance with ordinance 69 at such time that the owners thereof apply for subdivision approval, site plan approval or a building permit.
Existing developed properties in the drainage basin will be protected by the proposed drainage system from increased water flow that will emanate from the plaintiff's lands and lands of other as yet undeveloped properties, by reason of their development of the same, but the municipality contends that the already developed properties in the area will not be benefitted by the new drainage system as the existing system has been adequate for their purposes.
Three months after plaintiff's application was approved the governing body adopted ordinance 108, a general improvement ordinance. By its terms the $250,000 cost of this particular public improvement will be defrayed by the $40,000 required from the two developers, and bonds will be sold which will be retired annually as a municipal expense, in payment of the balance of the cost of the project.
Our Supreme Court has previously refrained from passing on the question of whether the Planning Act authorizes a municipality to impose upon a subdivider, as a planning matter, the duty to provide off-site improvements, an appropriate case not having been presented to the court. Longridge Builders, Inc. v. Planning Bd., Princeton Tp., 52 N.J. 348, 350 (1968).
Since the adoption of the Planning Act of 1953 (N.J.S.A. 40:55-1.1 et seq.) it has been the accepted rule that a municipality may, by a proper implementing ordinance, condition approval of a subdivision application upon a developer installing most onsite improvements. Deerfield Estates, Inc. v. East Brunswick Tp., 60 N.J. 115, 124 (1972); Kligman v. Lautman, 53 N.J. 517, 536-537 (1969); Magnolia Development Co., Inc. v. Coles, 10 N.J. 223, 227 (1952).
N.J.S.A. 40:55-1.21 provides:
*514 Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or all of the following improvements it may deem to be necessary or appropriate: street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest.
The municipality may also require a maintenance guarantee for a period not to exceed 2 years after final acceptance of the improvement, in an amount not to exceed 15 per cent of the cost of the improvement or of the original installation. [Emphasis supplied]
The trial court in Colonial Oaks West, Inc. v. East Brunswick Tp., 61 N.J. 560 (1972), found that off-site water mains, required by the planning board to be installed by the developer, under the particular circumstances as they appeared from the record, were "in a real sense an on-site improvement." This explicit factual determination was not the subject of appeal and, therefore, the Supreme Court did not consider disturbing it (at 564).
The opinions in Deerfield Estates, Inc., supra, and Colonial Oaks West, Inc., supra, recognizing the authority of a municipality to require installation of on-site water main extensions by a subdivider "in an appropriate case," has limited application here.
The distribution of water is a proprietary function. Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229, 233 (1952). Determinations based upon the financial condition of a municipal water utility, the supplier of the product, on the one hand, and the extent of reimbursement to consumers who are the developers and the ultimate purchasers of the lots, on the other hand, are not dispositive of the issues here.
We are here concerned with off-site drainage in which municipal income is not involved, and the statutes must be examined to ascertain municipal authority to require payment *515 for or contribution to the cost of such improvement installed by the municipality.
N.J.S.A. 40:55-1.20 provides that the planning board shall require "in the public interest that the tract shall be adequately drained" and shall be adaptable for the intended purposes "without danger to health or peril from flood * * * erosion or other menace." (Emphasis supplied)
The amount of rainfall absorbed by the land is reduced in proportion to the extent of structures, roads, driveways and other impervious surfaces which cover a development. As the surface outflow increases in amount and intensity by such construction, "flood" and "erosion" may menace the plots in the subdivision as well as lands of others located on its borders. Also, if downstream flow is obstructed by an inadequate exterior drainage system, the lots in the subdivision will be flooded in the back-up process.
In the opinion of the Appellate Division in Longridge Builders, Inc. v. Planning Bd., Princeton, 98 N.J. Super. 67 (App. Div. 1967), a case involving off-site street improvements, we find this language:
It is entirely conceivable that a broader approach might have to be entertained in relation to drainage or the provision of water or sewerage facilities, for example. These essentials for a residential subdivision might in some circumstances call for off-site operations to produce acceptable on-site conditions. And those might possibly be within the contemplated board's discretion to require of the developer, a point we have no occasion here to determine. [at 75-76]
This court is satisfied that municipalities have the right to require protective drainage improvements to be constructed on-site and off-site as a condition precedent to the approval of a subdivision which will be fully integrated with the community at large, particularly where the previous retention of water in a substantial pond on the premises will no longer be accommodated according to the subdivision plan. The subdividing of land is a privilege to which the Legislature has attached certain conditions. One who seeks the advantage of the privilege must comply with reasonable *516 conditions for design, dedication, improvement and restrictive use of the land so as to conform to the safety and general welfare of the lot owners in the subdivision and of the public. City of Buena Park v. Boyar, 186 Cal. App.2d 61, 8 Cal. Rptr. 674 (D. Ct. App. 1960).
Our courts have refrained from expressing views as to planning board authority to require installation of on-site or off-site improvements by subdividers where municipalities failed to adopt ordinances establishing standards and procedures for plat approval. Longridge Builders, Inc. v. Planning Bd., Princeton Tp., 52 N.J. 348, 350-351 (1968); Levin v. Livingston Tp., 35 N.J. 500, 510, 514-515 (1961); Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, 28 N.J. 423, 441 (1958).
N.J.S.A. 40:55-1.14 provides:
In any ordinance creating a planning board * * * provision may be made for the regulation of subdivisions within the municipality by approval of the planning board acting in lieu of the governing body of all plats before such plats may be filed with the county recording officer, provided such ordinance regulating subdivisions establishes regulations, requirements, and standards for plat approval by the planning board. * * * [Emphasis supplied]
N.J.S.A. 40:55-1.15 provides:
Before [approval of a subdivision] the governing body shall adopt by ordinance, standards for approving the design of subdivisions and the required street improvements, requirements for the submission of subdivision plats, and the procedure to be followed by subdividers. * * * [Emphasis supplied]
In this instance Wayne Township adopted ordinance 69 as an amendment to the subdivision ordinance, providing for standards by which contributions required to be paid by subdividers and others toward off-site municipal improvements could be calculated.
It provided that prior to the granting of final subdivision approval the applicant shall be required to post a performance bond or make cash payments toward off-site improvements *517 in whole or in part made necessary by the proposed subdivision and where the making of such improvement will confer a benefit upon the subdivided plots. The allocation of cost as between the subdivider, other property owners and the township shall be made in accordance with the following:
(1) The total cost of the off-site improvements, the increase in market values of the property affected and any other benefits conferred, the needs created by the application, population and land use projections for the general area of the applicant's property and other areas to be served by the off-site improvements, the estimated time of construction of the off-site improvements, and the condition and periods of usefulness, which periods may be based upon the criteria of N.J.S.A. 40A:2-22. The following criteria may also be considered as well as any other reasonable criteria which would aid in said determination:

* * *
(3) Drainage facilities may also be based upon and determined by the drainage created by or affected by a particular land use and considering:
(a) the percentage relationship between the acreage of the application and the acreage of the total drainage basin;
(b) the use of a particular site and the amount of area to be covered by impervious surfaces on the site itself;
(c) the use, condition or status of the remaining area in the drainage basin.
If the payment by an applicant is more than its share of the actual cost of the installations, the ordinance provides a rebate; if it is less, it will be assessed the difference. Others benefitted would be required to make proportionate contribution.
The municipality has urged that the ordinance moved in the direction of the suggestion of the court in Longridge Builders, Inc., supra 52 N.J. at 350, and Brazer v. Mountainside, 55 N.J. 456 (1969), that by virtue of the Planning Act a subdivider may be compelled to assume the cost of an improvement "which bears a rational nexus to the needs created by, and benefits conferred upon, the subdivision." But the term "needs" refers to improvements to accommodate the subdivided plots. It does not relate to the effect of the subdivision on exterior lands nor to off-site improvements *518 to accommodate the adjoining areas, made necessary by the proposed subdivision, as urged by the township.
Longridge, supra, did not refer to such needs; it referred to the needs of the subdivision only. Brazer, supra 55 N.J. at 466, affirmed this position, saying: "Beyond that, Planning Board impositions, although purportedly authorized by the Planning Act or the local ordinance, amount to impermissible exactions." Princeton Res. Lands v. Princeton Tp. Plan. Bd., 112 N.J. Super. 467, 475 (App. Div. 1970), limited its effect to required dedication or donation of off-site streets, rather than improvement by road construction thereon.
Deerfield, supra 60 N.J. at 131, described three principal ways that a water main extension may be financed: first, by a general improvement ordinance undertaking the work at municipal expense; second, by a local improvement ordinance under N.J.S.A. 40:56-1 et seq., assessing the cost against those properties benefitting; third, by requiring the developer to do the work as a condition precedent to subdivision approval, with partial or total reimbursement from the municipality engaged in the business of delivering water. The court said the third recourse "may be had only where appropriate local legislation" is adopted.
However, nowhere in the case law of our State is there direction supplied to the specific course to be followed by municipalities. Longridge Builders, Inc., supra 52 N.J. at 351, only states that "there must be adequate standards and procedures for determining how the allocation of cost shall be made."
Is there any authority in the Planning Act by which a municipality may exact from a subdivider a contribution to be applied toward the cost of an off-site improvement installed by the municipality which would not have been necessary but for the effect of the development construction upon the property of others?
It must be borne in mind that the financing of the installation of public facilities by a governing body and the *519 authority of a municipality exercised under the Planning Act are not interlocking powers. Considerations governing one are alien to the other. The statutes cannot be read in pari materia.
A municipality can only finance such improvements as provided by statute by adopting general improvement bond ordinances and performing the work at municipal expense, or by adopting local improvement bond ordinances under N.J.S.A. 40A:2-1 et seq. and assessing those benefitted as provided in N.J.S.A. 40:56-1 et seq.
In Magnolia Development Co., Inc. v. Coles, 10 N.J. 223 (1952), the court condemned as a misuse of municipal authority the imposition upon a subdivider of conditions not authorized by the planning statute at that time. A municipality exercises police power under this statute with respect to new developments within its borders. But in exercising its powers, it must resort only to the powers granted to it by the Legislature for this purpose, and the procedures therein prescribed. Planning powers may not be exerted by indirection; the exercise of these powers must needs be in keeping with the principles of the enabling statutes. Reid Development Corp. v. Parsippany-Troy Hills Tp., 10 N.J. 229 (1952).
While the goal of imposing equitable charges to avoid injury to the neighbors of developers is laudable, payment for municipal off-site improvements may not be secured indirectly through planning board procedures without legislative sanction. Planning board ordinances depend for their validity upon the statute.
Municipalities only have the means to achieve the result sought here by resort to the statutory scheme, N.J.S.A. 40:56-1 et seq., for the construction of local improvements to be paid for by assessments levied against the property owners who are benefitted by enhancement of their property values, to the extent of such benefit. Deerfield Estates, Inc. supra 60 N.J. at 129.
*520 Therefore, insofar as the result urged by the municipality is posited on the powers granted by the Planning Act, it cannot be sustained. For the same reason the result cannot be sustained by the body of statutory or decisional law relating to extensions of public improvements by a municipality. Lake Intervale Homes, Inc. v. Parsippany-Troy Hills, supra 28 N.J. at 441.
Plaintiff's right to recover was further enhanced by the municipality's adoption of ordinance 108, a general improvement bond ordinance governing the financing of this particular drainage system towards which the plaintiff had been required to contribute.
It described "contributed funds" in the sum of $40,000, which it had secured from plaintiff and another developer, appropriated as a down-payment in accordance with N.J.S.A. 40A:2-11. The balance of the cost of this general improvement was to be paid from ad valorem taxes imposed upon all taxable property in the township, although contributions toward the cost would subsequently be required from other developers.
Since the improvement was undertaken as a general, it "may not be transmuted into a local improvement at the whim" of the governing body. River Edge Homes, Inc. v. River Edge, 130 N.J.L. 376 (Sup. Ct. 1943). Nor may it be transmuted into an improvement to be paid for by subdividers in accordance with the standards described in ordinance 69. The exaction of payment from only plaintiff and one other developer under this ordinance was unjust and discriminatory.
The township should have denied the application for the subdivision if the abandonment of the pond or other subdivision features would have threatened properties in the drainage area with flood or erosion, or it should have obliged plaintiff to construct a drainage conduit from the development to an existing main channel as a condition precedent to subdivision approval, as was required by the planning board in Kotlarich v. Ramsev, 51 N.J. Super. 520, 534 *521 (App. Div. 1958), but not passed upon by the court. Instead, it engaged in ultra vires acts resulting in imposing an impermissible exaction upon the plaintiff.
Counsel shall submit an order providing for judgment in favor of the plaintiff.