## WALD CORPORATION v. DADE COUNTY
No. 75-3173.

Circuit Court, Dade County.

September 12, 1975.

Korner & Sampson, Coral Gables, for the plaintiff.

Stuart L. Simon. County Attorney, Robert A. Ginsburg, Assistant County Attorney, for the defendant.

DAN SATIN, Circuit Judge.

*Summary final judgment:* This cause came before the court after due notice upon cross motions for summary judgment by the parties on July 30, 1975. The court heard argument of counsel, considered memoranda of law together with the stipulated facts and evidence and the entire record in this cause, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law —

### FINDINGS OF FACT

The plaintiff is the owner of ten acres of property located in Dade County, to wit: —

> Tract 42 in *Perrine Grant Subdivision* of Section 1, Township 56 South, Range 39 East, according to the Plat thereof recorded in Plat Book 1, at Page 141 of the Public Records of Dade County, Florida

The plaintiff seeks a declaration of the unconstitutionality of §28-13 of the Code of Metropolitan Dade County which, inter alia, requires the dedication of land for drainage facilities as a condition for plat approval. The challenged provisions are set forth below —

Sec. 28-13. Drainage.

(a) Master plan and manual of public works construction. The developer shall plan all drainage for his subdivision in accordance with the flood criteria map, recorded in plat book 53, pages 68, 69, and 70, or as such plan and map may be changed or modified. The drainage plans shall be subject to approval of the public works department for compliance with such plan.

(b) Permit to construct or alter drainage ways. No individual, partnership, or corporation shall construct, deepen, widen, fill, re-route, or alter

any existing drainage way, ditch, drain, or canal without first obtaining a written permit from the department of public works. Plans for all such work shall comply with the manual of public works construction of the public works department, and all such work shall be done under the supervision and subject to the approval of the department of public works. Right-of-way for all such drainage works and maintenance thereof as prescribed by the manual of public works construction and the county water control plan, must be made prior to any such construction or alteration if so required by the public works department.

(c) Rights-of-way and easements. Whenever any drainage way, stream, or surface drainage course is located or planned in any area that is being subdivided, the subdivider shall dedicate such stream or drainage course and an adequate right-of-way necessary for maintenance, future expansion and other purposes along each side of such stream or drainage course as is determined by uniform standards prescribed by the manual of public works construction.

(d) Storm water. Adequate provision shall be made for the disposal of storm water subject to standards prescribed in the manual of public works construction.

(e) Contour map and drainage of adjacent areas. A contour map shall be prepared for the area comprising the subdivision and such additional area as may be required by the department of public works necessary to include all water sheds which drain into or through the property to be developed, provided that this map of the adjacent areas may be prepared from existing maps or other data available to and acceptable by the department of public works. The design for drainage of the subdivision must be adequate to provide for drainage of adjacent water shed areas, and design or drainage structures must provide for drainage of adjacent water sheds after complete development of the total area. Where ditches and canals are required, rights-of-way shall be provided for future needs in accordance with uniform standards prescribed in the manual of public works construction. Provided, however, that the developer may be permitted by the department of public works to excavate or open, or construct necessary drainage needs whenever the developed or undeveloped status of adjacent water sheds may so warrant as determined by the department of public works.

(f) Off-site drainage. Off-site drainage shall be mutually coordinated by and between the subdivider, the department of public works, and the building and zoning department.

In addition to a declaratory judgment that the challenged provisions of the county code are unconstitutional, the plaintiff urges the court to order Dade County to initiate eminent domain proceedings to acquire a permanent easement or fee simple title to that portion of the subject property needed for a drainage facility.

The defendant, Metropolitan Dade County, in conjunction with the Central and Southern Florida Flood Control District and the United States Army Corps of Engineers determined that a system of canals should be constructed to protect southern Dade County from flooding. From the evidence it is readily apparent that a canal system was necessary to proetect the community as it existed prior to 1960. The approximate locations of these canals were to follow the natural topography or glade lines. One of these natural glade lines runs through the property of the plaintiff and according to the plan adopted by the board of county commissioners in 1957, a tributary of a secondary canal system was planned through its property.

This dispute began in April of 1974 when the plaintiff decided to subdivide its property for development, and submitted a tentative plat to the Dade County Public Works Department. The property is located in a slough and "glade area" of Dade County where the land is subject to periodic flooding. Essentially, a slough or glade area is a natural channel that surface water flows through to drain upland to the bay. Although the property (known as the Wald Subdivision) is itself about six inches above the flood level, drainage must be provided across the subdivision because it is part of the natural glade which is lower both upstream and downstream from the plaintiff's land and is subject to the provisions of the County Code, §28-13(c) which provides, in pertinent part —

> "Whenever any drainage way, stream, or surface drainage course is located or planned in any area that is being subdivided, the subdivider shall dedicate such stream or drainage course and an adequate right-of-way necessary for maintenance, future expansion and other purposes..."

The tentative plat submitted by the plaintiff did not comply with the dedication requirement, and the Dade Couny Plat Committee disapproved the plat. That decision was later affirmed by the Zoning Appeals Board. In November of 1974 the plat committee again considered the Wald plat and gave its approval subject to certain conditions, one of which was the submission of an acceptable drainage plan. The county advised the developer that although a canal was not essential, some type of flow-through drainage facility would be necessary.

Unless the Wald Subdivision provides sufficient drainage facilities essential to draining its own surface water, there would be damage to both upstream and downstream properties as well as to the subdivision itself.

Wald declined to voluntarily dedicate the required right-of-way, exhausted their administrative remedies and filed suit in the United

States District Court for the Southern District of Florida. That court granted the county's motion to abstain and dismissed the action without prejudice and so long as Wald follows certain prescribed procedures to preserve the federal constitutional questions it appears that it may return to that federal forum if it decides so to do.

It is not possible to separate individual tracts within the glade into definite and distinct basins because of the extreme permeability of the underlying soil which allows relatively rapid movement of the water table as it rises and falls in adjacent areas. The entire glade which is to be drained by means of the appropriate drainage system must be considered in its entirety for the county to exercise adequate flood control protection and water conservation in the public interest.

The primary issue before this court appears to be whether the mandatory dedication of an owner's land for canal right-of-way and other appurtenant uses is a reasonable regulation which the county may impose as a condition for approval of a subdivision plat, or whether it is a taking of private property for a public purpose within the meaning of the law of eminent domain.

Wald argues that the operative obligation of the canal acquisition requires the institution of eminent domain proceedings and determination of full compensation to be paid the owner in accordance with the protective limitations on sovereign power incorporated in our state constitution.

The county argues that the required subdivision exaction should not be construed to be a taking of private property for a public purpose but a valid exercise of its police power.

From the foregoing finding of fact this court draws the following —

### CONCLUSIONS OF LAW

The legal issue before the court is whether the mandatory dedication of land for drainage purposes is a reasonable regulation which the county may impose as a condition for approval of a subdivision plat, or whether it is a taking of private property for a public purpose within the meaning of the law of eminent domain. The constitutional protection that private property not be taken for a public purpose without compensation is qualified by the rightful exercise of the police power. E.g., Brous v. Smith, 304 N.Y. 164, 106 N.E. 2d 503 (1952). Thus, if the required dedication of property for drainage purposes is a reasonable exercise of the police power under the facts and circumstances of this case, it will not

amount to an appropriation of land for which the owner is entitled to compensation under the law of eminent domain.

The courts which have previously addressed themselves to sub-division requirements have developed at least two identifiable legal standards.

Those cases which follow the principle enunciated in the land-mark decision of Ayres v. City of Los Angeles, 34 Cal.2d 31, 207 P.2d 1 (1949), reason that the government may withhold plat approval and plans for development unless the landowner complies with conditions "reasonably related" to the needs of the proposed subdivision and the public.[1]

The Supreme Court of Illinois has enunciated a stricter standard in Pioneer Trust and Savings Bank v. Village of Mt. Prospect, 22 Ill.2d 375, 176 N.E. 2d 799 (1961) —

> "... if the burden cast upon the subdivider is *specifically and uniquely attributable* to his activity, then the requirement is permissible; if not, it is forbidden and amounts to a confiscation of private property in contravention of constitutional prohibitions rather than reasonable regulation under the police power." (Emphasis supplied.)

Under the standard of "being reasonably related" or under the standard of "specifically and uniquely attributable" the subdivision requirements relating to appropriate drainage of the subject property must be upheld because —

> (1) proper drainage is "reasonably related" to the development of real property located in a flood prone natural glade or slough; and

> (2) the undisputed evidence reveals that the development of the property without provision of adequate drainage facilities would subject not only the proposed subdivision to flooding, but the adjacent upstream and downstream properties as well. Thus, the burden to prevent such flooding properly falls on the developer as "specifically and uniquely attributable" to the development of the property.[2]

---

1. See, e.g., Associated Home Builders, Inc. v. City of Walnut Creek, 4 Cal. 3rd 633, 94 Cal. Rptr. 630,484 P.2d 606 (1971) app.dism'd, 404 U.S. 78; City of Albuquerque v. Chapman, 77 N.M. 86, 419 P.2d 460 (1966); Brous v. Smith, supra.

2. See, e.g., Brumley v. Dorner, 78 Fla.495,83 So.912; Dade County v. South Dade Farms, 133 Fla. 288,182 So.858; Panama City v. York, 157 Fla. 425, 26 So.2d 184.

The law appears to be uniformly established that local government has the right under the police power to require, as a precondition to subdivision plat approval, the installation of *drainage facilities* on the property to be subdivided which will accommodate both on-site and off-site drainage without such condition resulting in an unconstitutional taking of private property without just compensation, particularly where a subdivision lies within a defined drainage course.[3]

The recognition by both parties of the need to provide appropriate drainage when the subject property is developed provides ample support for the exercise of the police power to require the appropriate facilities incident to platting. It is not disputed that the need for flood control was indicated prior to the plat application of Wald, however, it is equally clear that the necessity of providing proper drainage becomes absolutely imperative as the direct and immediate result of subdivision and development. Health, lives and property become endangered where before only the vacant land was subject to flooding.

This court therefore holds that the police powers of a home rule county may be constitutionally exercised, as part of a subdivision code, to require an owner of property, who is seeking subdivision plat approval, in a glade drainage way to provide for and relate to the drainage pattern in the area, where to do otherwise would result in adverse effects and damage to both upstream and downstream properties and to the proposed subdivision itself, and the court finds and determines that the provisions of Chapter 28 of the Code of Metropolitan Dade County, as an exercise of the police power of the county, constitutionally and validly contain sufficient standards relating to drainage requirements so as to guide and control county officials in the implementation and enforcement of the code. See Conner v. Joe Hatten, Inc., Fla. 1968, 216 So.2d 209.

It is accordingly ordered and adjudged as follows — (1) The plaintiff's "Motion for Rehearing on Motion for an Order Vacating the Court's Order on Motions to Strike and to Dismiss, or in the

3. Petterson v. City of Naperville, 9 Ill.2d 233, 137 N.E. 2d 371 (1956); City of Buena Park v. Boyar, supra, 186 Cal.App. 2d 61, 8 Cal.Rptr. 674; Longridge Bldrs., Inc., v. Planning Board of Princeton, 92 N.J. 402, 223 A.2d 640; Divan Bldrs., Inc., v. Planning Bd. of Tp. of Wayne, 122 N.J. Super. 508, 300 A.2d 883, aff'm., 317 A.2d 413; Clinton v. West Norriton Township, 75 Montg.Co.L.R. 262 (1958). See also, Sibson v. State of New Hampshire, 336 A.2d 239 (1975). Anderson, *American Law of Zoning*, §19.43 — "These improvements are so clearly essential to health and safety that the relation of the requirement to the police power rarely is questioned."

Alternative for Clarification" is denied. (2) The plaintiff's motion for summary judgment is denied. (3) The defendant's motion for summary judgment is granted. (4) Summary final judgment is entered for and on behalf of the defendant, Dade County.