ASSOCIATED MILK PRODUCERS, INC., Appellee,

v.

The CITY OF MIDWEST CITY, Marion C. Reed, Mayor, Claude R. Rigsby, Bob Matthews, James E. Hulsey, Jr., Fred R. Child, Marvin D. Almon, and George H. Reiter, Councilmen, Jerry Wade, City Manager, John Bates, City Engineer, and Buster Fairrimond, Building Inspector, Appellants.

No. 49495.

Supreme Court of Oklahoma.

March 21, 1978.

Rehearing Denied Sept. 11, 1978.

Edward H. Ferrish, Midwest City, for appellants.

Larry Lewis, James F. Howell, Howell, Webber & Sharpe, Midwest City, for appellee.

WILLIAMS, Justice.

This is an appeal by the City of Midwest City and certain of its officials, defendants below, from a judgment and order of the district court of Oklahoma County granting permanent injunction against the City which in effect prevented the City from enforcing certain provisions of city ordinances as against the plaintiff below, Associated Milk Producers, Inc.

Plaintiff corporation operates a milk processing plant on about ten acres of land in Midwest City. Running north and south along the west side of this tract is Sooner Road, which is designated a "major street" by Midwest City ordinances. During the "flood season" of each year (spring and summer) milk is produced in quantities which greatly exceed the market demand, and plaintiff corporation, in its processing plant on the premises, converts the excess milk to a powder so that it may be stored for later sale. Most of it is sold during the fall and winter, when production is at a lower rate. Because of inadequate facilities on its own premises, plaintiff corporation, in past years, has stored the powdered milk in public warehouses in Oklahoma City. When sold, the powdered milk is loaded directly onto railroad cars parked on a railroad right-of-way which abuts plaintiff corporation's premises on the southeast. Thus, under existing conditions, plaintiff is required to transport the powdered milk from its plant to the public warehouses in Oklahoma City, and then from the warehouses back to its premises for loading.

In 1975, in order to eliminate the cost of warehousing, and the cost of transportation to and from the warehouses, plaintiff applied for a building permit to authorize the construction of a warehouse on its own premises. The permit was granted, subject to two conditions required by Midwest City ordinances. They were (1) that plaintiff dedicate for street purposes a 27-foot-wide strip of its land running along Sooner Road on the east; and (2) that plaintiff, at its own expense, pave the strip so dedicated.

Plaintiff has no objection to requirement (1) above, and no question is raised in that regard. It did object to requirement (2), and formally requested that it be waived by the City Council. This request was denied.

Plaintiff then filed an action in the district court which in effect asked for a writ of mandamus to compel the defendant City to grant the building permit without requirement (2). Defendant City filed a demurrer, a motion for summary judgment, and a motion to dismiss.

On the day set for the hearing, the trial court, during a preliminary conference with counsel, expressed the view that mandamus was not the proper remedy, but that the plaintiff should file an amended petition asking for an injunction. The court also suggested that, in order to avoid unnecessary delay and inconvenience to the parties, their counsel and witnesses, it was willing to proceed with the hearing with that understanding. No objection to this procedure was made, and both parties produced the testimony of certain witnesses. They also stipulated as to the application for the building permit, the granting thereof subject to the requirements previously mentioned, and the refusal of the City Council to waive requirement (2), all as set out in the trial brief of defendant City in support of its motion for summary judgment. The matter was then continued to a day certain, with plaintiff to file the amended petition for writ or injunction within 2 days, and defendant to plead thereto within ten days after that.

For reasons not shown in the record before us, but apparently by agreement of the parties, the second hearing was held four days in advance of the date previously set. At this hearing certain exhibits were introduced in evidence and both parties were afforded an opportunity to present further testimony. Later the same day, with counsel for both plaintiff and defendants

present, the trial judge announced his judgment granting the injunction, with findings (1) that enforcement of Section 16–77 and Section 32–64 of the Midwest City ordinances, requiring plaintiff to pay for the improvement of the strip of land to be dedicated, would be invalid in that such sections are in conflict with 11 O.S.1971, Sec. 85(e); and (2) that such requirement as against plaintiff would be unreasonable in that no benefit would result to plaintiff. Defendant City then appealed to this Court.

Section 16–77, a portion of Midwest City's "Major Street Plan", requires in subsection (a) that:

"Any person, firm, or corporation who hereafter develops any * * * industrial property or who constructs or moves any building for use * * * along the major streets, * * * *due to the increase of traffic* * * * shall be required to dedicate to the City of Midwest City such additional right-of-way as may be necessary to equal fifty (50) feet from the center line of such major street." (Emphasis added.)

Sub-section (b)(1) of the same section provides that "Such person, firm, or corporation shall also be required * * * to do the following":

"Improve the existing major street in order that such major street will provide two 12-foot traffic lanes between center line and right-of-way line, in accordance with the specifications for paving hereafter prescribed * * *."

Section 32–64, a portion of Midwest City's "Transportation Plan", contains, in sub-section (b), a requirement in language identical with ·that quoted immediately above from Section 16–77, sub-section (b)(1).

Under uncontradicted evidence in the record before us, the building of the warehouse on plaintiff's premises in Midwest City will not result in any "increase of traffic". As a matter of fact, the opposite is true; a considerable amount of heavy truck-traffic between plaintiff's Sooner Road premises and the public warehouses in Oklahoma City will be eliminated. There is no other evidence in the record with regard to any increase, or decrease, in traffic to result from the building of the warehouse on plaintiff's premises.

In briefs in this Court, defendant City argues generally that the sections of its ordinances quoted above are valid and amount to a proper exercise of its police powers. For reasons set out below, we do not agree.

The general powers of cities and towns in this State with regard to roads and streets are set out in 11 O.S.1971, Chapter 3. Under 11 O.S.1971, Sec. 83, et seq., procedures to be followed by municipalities in laying out or improving streets are set out. Such procedures may be initiated either by the municipality or by the owners of property abutting the streets concerned. When the procedure is initiated by the municipality, the statutes require a public notice to be given, with a hearing to be held at which property owners may object. If the owners of more than one half of the abutting property object, the street concerned must be eliminated from the project. Of course no such procedure was followed in this case, either by the City or by the abutting property owners.

As we have noted, the trial court in the case now before us found that the sections of the Midwest City ordinances previously mentioned are in conflict with 11 O.S.1971, Sec. 85(e). That portion of the statute provides:

"Any city or town that proposes to widen an existing two-lane street to a width which would permit four or more lanes of traffic shall be liable for the entire cost of the improvement, except that portion of the costs that may be paid by the board of county commissioners, the State of Oklahoma, the United States of America, or the amount set forth in a. petition for street improvements as assessable against property owners."

Under this sub-section, the costs of changing Sooner Road from a two-lane road to a four-lane road may be assessed against the owners of abutting property only when

more than one-half of the property owners have filed a petition for street improvements, pursuant to the provisions of 11 O.S. 1971, Sec. 87, et seq. Of course that has not been done.

In this connection, notice should perhaps be taken of 11 O.S.1971, Sec. 85(a), which provides as follows:

"It is declared to be the public policy of this State that any street improvement district created by any city or town under the provisions of Title 11 of the Oklahoma Statutes, *or under any charter provision*, shall provide for notice to the affected private property owners, an opportunity to protest against said improvements and that such protest as provided in paragraph (b) and (c) of this section shall eliminate the proposed improvements." (Emphasis added.)

Article VIII, Sec. 8, of the Charter of Midwest City, provides in the first paragraph that the city shall have the power to construct "special improvements consisting of curbing, curbing and guttering, grading, *paving or surfacing* of streets * * *". (Emphasis added.) Sub-section (a) of the same section is as follows:

"Proceedings looking to the installation of any of the special improvements hereinabove listed in Section 8, and proceedings looking to the payment of said improvements by the people of Midwest City, shall be instituted, conducted and maintained as by *General Laws of the State of Oklahoma provided for Cities.*"

The City argues in its brief that the quoted charter provision "pertains only to the method of assessment in special improvement districts". However, we find no language in said charter provision so limiting its meaning. Special improvement *districts* are not mentioned. Unlike the case of *Moore Funeral Homes, Inc. v. City of Tulsa*, Okl., 552 P.2d 702, 704, there is here no conflict between the charter provisions and the State statutes as was true there.

The City also argues that the ordinances concerned are in effect a proper exercise of the City's police power under 11 O.S.1971, Section 401, et seq. Again, we do not

agree. Those sections of the statute (Chapter 7 of Title 11, Oklahoma Statutes) are concerned with "Buildings, Zoning and City Planning". They authorize the adoption of zoning ordinances and regulations as to the use, size, location, etc., of buildings. The Midwest City ordinances in the case now under consideration are not, in form or substance, zoning ordinances. The record before us shows conclusively that the property owned by plaintiff corporation is already zoned for industrial purposes, and that no change in the zoning classification, or variance therefrom, is either needed or requested.

The cases cited in the brief of the City are not helpful for the reasons set out below.

In *Southern Pacific Company v. City of Los Angeles*, 242 Cal.App.2d 38, 51 Cal. Rptr. 197, the City was proceeding under an applicable zoning ordinance. The record in that case showed that the warehouse for which a building permit was requested would generate a considerable amount of new traffic, and would also require the construction of a new railroad spur to service the new building. The court held that these facts justified the requirement that a portion of the land be dedicated for street purposes. There was no requirement, as in the case now before us, that the street to be dedicated be paved at the land owner's expense, and of course the record here does not show that new traffic will be generated.

*City of Buena Park v. Boyar*, 186 Cal. App.2d 61, 8 Cal.Rptr. 674, involved the approval of a sub-division plat under the Subdivision Map Act of the California Legislature (Cal.Bus. and Prof.Code, Sec. 11500 et seq.). Such act does not contain a provision, such as 11 O.S.1971, Sec. 85(e), which prohibits the City from requiring the land owner to pay for the widening of a street from two lanes to four lanes.

*Village of Lynbrook v. Cadoo*, 252 N.Y. 308, 169 N.E. 394, was an action by the Village to cancel of record a sub-division map filed without the approval of the Planning Board, as required by law.

*Brous v. Smith*, 304 N.Y. 164, 106 N.E.2d 503, involved a requirement that a developer build roads in his sub-division before getting the required approval. The opinion indicates that the requirement was authorized by a New York statute called the "Town Law" (Laws, 1938, Ch. 264, Sec. 5) and was also contained in similar statutes called the "General City Law" and the "Village Law".

*Botchlett v. City of Bethany*, Okl., 416 P.2d 613, was a case in which plaintiff applied for an injunction to prevent "continuous and harassing arrests" for the violation of a city zoning ordinance. His principal argument was that he had been using his property (zoned for residential purposes) as a storage yard since before the enactment of the city zoning ordinance, and was therefore entitled to continue his "nonconforming use". After pointing out that plaintiff had stipulated that he began his non-conforming use in violation of an existing *county* zoning ordinance, this Court cited the general rule that a non-conforming use, to be entitled to protection against a subsequently enacted city zoning ordinance, must be one that existed *and was lawful* when the city zoning ordinance was enacted. The trial court judgment, which denied plaintiff an injunction, but granted the city's cross-petition for an injunction to prevent the continued use of the premises as a storage yard, was sustained.

In *Mid-Continent Builders, Inc., v. Midwest City*, Okl., 539 P.2d 1377, the property owner, a developer of sub-divisions, installed water lines in a new sub-division, as required by an existing Midwest City ordinance. It thereafter brought an action in reverse condemnation, seeking to require the City to pay for the water lines. The trial court held that there had been no unconstitutional "taking" of plaintiff's property and dismissed the action. The judgment was sustained on appeal. In the case now before us, the plaintiff corporation is not a developer of sub-divisions, and seeks only to use its property for a purpose for which it is already zoned, with no increased traffic to be generated.

In summary: as an exercise of power granted under Title 11, Oklahoma Statutes, Chapter 3, the ordinances concerned are in plain violation of 11 O.S.1971, Sec. 85(e), and in that sense invalid as the trial court found. They are also in violation of Article VIII, Sec. 8, of the Midwest City Charter, which clearly adopts the "General Laws of the State of Oklahoma" concerning such things as the "paving or surfacing of streets".

■ Defendant City also argues that the trial court erred in permitting the plaintiff corporation to amend its petition "from mandamus to injunction". No authority is cited in support of this proposition and, as we have seen, no objection was made at the time. The record before us shows that all parties understood that the amended petition for injunction would be filed, and that the action of the trial court in proceeding to hear the testimony of witnesses before the amendment was actually filed was merely for the convenience of the parties and witnesses present. It is not argued, and the record does not show, that the defendant City was deceived or misled in any way. Also, the record shows that the permission was granted, and the understanding entered into, before any testimony was introduced, and not afterward, as is alleged in the City's brief. We hold that the trial court did not err, and defendant City was not prejudiced, by the procedure followed.

The judgment of the trial court is affirmed.

All Justices concur.