1999 OK CIV APP 76

**Patti BARNES, Plaintiff/Appellant,**

v.

**BOARD OF ADJUSTMENT OF THE CITY OF BARTLESVILLE, Defendant/Appellee.**

**No. 90,998.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 30, 1999.

Certiorari Denied July 8, 1999.

Kevin D. Buchanan, Bartlesville, Oklahoma, For Appellant.

Jerry M. Maddux, Bartlesville, Oklahoma, For Appellee.

### OPINION

GARRETT, Judge:

¶ 1  On April 15, 1996, the City Council of the City of Bartlesville, Oklahoma, enacted an amendment to Article VI of the Bartlesville Municipal Code, pertaining to animals. Section 3–132 of Article VI now provides:

Sec. 3–132.  Other animals.

No outdoor quadrupeds or bipeds, except dogs and cats, shall be kept without prior approval of the Board of Adjustment as a special zoning permit pursuant to the provisions of the Bartlesville Metropolitan Zoning Regulations.

¶ 2  Appellant, Patti Barnes, owns a 220 pound Vietnamese pot-bellied pig named Porsche which she previously kept in her house, but more recently, for a year or more, prior to the effective date of the new ordinance, Porsche has been kept outside in the backyard.  Barnes applied for a Special Zoning Permit from Appellee, Board of Adjustment of the City of Bartlesville (Board) to keep the pig at her residence.  Two neighbors appeared to protest the issuance of the permit, claiming the pig created a nuisance due to odor and flies.  Board denied the permit.  Barnes appealed to the district court.  The district court upheld Board's denial of the permit, and denied Barnes's motion for new trial.  Barnes appeals.

¶ 3  For reversal, Barnes contends:

1.  There was insufficient evidence to support the trial court's decision that maintaining a Vietnamese pot-bellied pig at Barnes's residence constituted a nuisance to the neighborhood sufficient to deprive her of a special zoning permit.

2.  The animal control ordinance in question violates the provisions of 11 O.S. Supp. 1994 § 44–107.1[1] by failing to provide a grandfather clause for Barnes's pot-bellied pig.

¶ 4  Pursuant to Section 10, paragraph 10.58 of the Bartlesville Metropolitan Plan-

1.  § 44–107.1.  Nonconforming use—Termination—Exception
   A.  The lawful nonconforming use of a building, structure or premises as such existed at the time of the adoption and recording of any ordinance affecting it, may be continued, although such use does not conform with the provisions of such ordinance.  The municipality may provide for the termination of lawful nonconforming uses either by specifying the period or periods within which such use shall be required to cease, or by designating conditions or circumstances which shall cause such use to cease, or by providing a formula or formulas whereby the compulsory termination of a nonconforming use shall be so fixed as to allow a reasonable period for the amortization of the investment in the nonconformance.

   B.  Regulations and restrictions affecting the termination of nonconforming uses as authorized by this section may be adopted or amended by the municipality only after notice and hearing as provided in Sections 43–104 and 43–105 of Title 11 of the Oklahoma Statutes.
   C.  Nothing in this section shall be construed to permit or authorize municipalities to terminate lawful nonconforming uses consisting of oil and/or gas activity.
   D.  Nothing in this section shall be construed to permit or authorize municipalities to terminate a lawfully erected nonconforming sign unless such sign is altered in a manner that increases the degree of nonconformity or is abandoned for a period of more than two (2) years.

ning Area Zoning Regulations, the Board shall not grant a "special zoning permit" unless all of the following findings are met:

    A. That the use as described by the applicant will comply with all provisions and/or conditions established therefor by these regulations, and

    B. That the use will not, in the circumstances of the particular case constitute a nuisance, be injurious to the neighborhood or other wise detrimental to the public welfare.

    C. That the proposed structure or use conforms to the requirements and intent of these regulations, and

    D. That any additional conditions stipulated by the Board of Adjustment as deemed necessary in the public interest have been met.

¶ 5   Most of the testimony at the zoning hearing was on the subject of whether the pig created a nuisance, under sub-paragraph B above. Barnes' neighbors, Pat Frazee Woods and Joyce Govett, testified. Ms. Woods said she is unable to use her front porch which faces the west side of Barnes' house; she is no longer able to enjoy sitting on the front porch to have a morning cup of coffee because of the odor created by the pig; there are flies because of the pig, but the main problem is the odor; and, the pig is an "intrusion into my life and the enjoyment of my home and property." She testified she had lived in rural Iowa for a couple of years, and she can tell the difference between a dog odor and a pig odor. She made complaints against Barnes in the past, relating to trash in her yard, and being chased into the house by Barnes' dogs. While she had no idea how to differentiate between flies attracted by a pig and flies attracted by dogs, she testified: "We did not have flies like that before the pig was in residence."

¶ 6   Ms. Govett testified that in the last several years since Barnes acquired Porsche, there had been noticeably more flies and odor which they did not have before. She attributed that to the fact that Porsche is bigger and is now outside. She has a patio in her backyard which she cannot use because of the unpleasant smell and the flies. The flies are primarily a problem in the summer, and the odor is a problem mostly in the summer or on warm days during the winter. Also she was concerned that pigs are not vaccinated for rabies, but they carry rabies. She admitted she and her husband do not get along with Barnes very well and that they had made complaints against Barnes for her dogs being out unattended and because an old wrecked car was never moved out of her driveway. She can tell the difference between the odor of dog feces and pig feces. Several neighbors of Barnes, all of whom also have dogs, testified that they have not noticed a problem with Porsche.

¶ 7   Dr. Loafman, a veterinarian, testified he had treated Porsche. He does not believe there is any more odor attributable to a Vietnamese pot-bellied pig than any other animal. He said the Department of Agriculture treats pot-bellied pigs no differently than any other pigs "as far as interstate regulations and transporting" but they're typically found in homes as pets. He testified he had examined Porsche in Barnes' basement. The last time he examined Porsche was January 1, 1996. He did not know that Porsche now lives primarily outside.

¶ 8   Barnes testified she had had Porsche for six years, having gotten her as an infant. The first couple of years Porsche stayed inside all of the time. She was trained to use a litter box, and they later took that away. She was then house trained like a dog. Now she spends most of the time outside because she prefers that. The Govetts and Ms. Woods had never complained about Porsche until now, but they had complained about "everything" as to other aspects of her property, i.e., her trash can sat out on the curb too long; a friend's car, which was going to be restored, was in her driveway; her cats, for which she had to build an outside pen to avoid Mr. Govett catching them in traps; about her having three dogs, one of which was a stray she was taking to the vet; and her kids' playing frisbee which landed in the Govett's yard which Mr. Govett would not give to them or allow them to get. She said it was fair to say that things have not all been well between her and her two neighbors.

¶ 9  Barnes testified Porsche has no offensive odor, does not shed and doesn't have ticks or fleas. Porsche has never been vicious and has never bitten anyone. She is in good health, and the noises she makes are oinks, grunts and squeals which are not nearly as loud as her Great Dane's bark.

¶ 10  Lisa Beeman, Planning Director for the City of Bartlesville, testified. Code enforcement is within the purview of the planning department. If it came to the attention of the planning department that someone in the city limits had animals other than dogs or cats, they would be advised they could not keep them without a special permit. She also stated that even before the ordinance was adopted, keeping a pig, which is an "agricultural animal", was not permitted. She said a pot-bellied pig was treated as any other pig according to the Department of Agriculture. She said Barnes' options are to keep the pig indoors or to remove it from the premises.

¶ 11  Eulous West, the Chief Building Inspector, Code Enforcement Officer of Bartlesville, testified he went to Barnes' property because of a complaint from citizens. He saw Porsche and he could detect an unpleasant odor. He stated, "Pigs have a special odor, pig feces have an order (sic), and I did spell (sic) the odor." He believed the odor could be unpleasant to people who live around it. He cannot distinguish between dog and pig feces by their appearance, but he could distinguish them by smell. He was familiar with the smell of pig feces, "Being raised on a farm and raising pigs, . . . ."

¶ 12  Barnes argues that the court's order is not supported by sufficient evidence to justify denial of her permit because the complaining neighbors were biased against her and other neighbors experienced no problems with Porsche. She contends Mr. West's testimony is insufficient to indicate the odor would be enough to make two neighbors unable to enjoy the outdoor use of their property. However, the trial court heard the

testimony, observed the witnesses and is the sole judge of their credibility. While the evidence was disputed, there was sufficient evidence to support the denial of Barnes' application.

¶ 13  Barnes' second proposition, contending the ordinance violates 11 O.S. Supp.1994 § 44–107.1, due to the lack of a "grandfather clause", is not persuasive. The reference to "lawful nonconforming use" in § 44–107.1 is fatal to Barnes' argument. There was testimony not only from the City, but also from Barnes' witness, Dr. Loafman, a veterinarian, that a pot-bellied pig is a pig, according to the Department of Agriculture. Ms. Beeman testified a pig is considered a farm animal which, before the amendment of the ordinance, was not permitted to be kept within the city limits of Bartlesville. Therefore, keeping Porsche outside in Barnes' backyard was not lawful before the action of the City Council in amending Section 3–132 of Article VI of the Municipal Code, and therefore, cannot become a nonconforming use which is exempt from the operation of the ordinance. See *Associated Milk Producers, Inc. v. City of Midwest City,* 1978 OK 38, 583 P.2d 491, citing *Botchlett v. City of Bethany,* 1966 OK 39, 416 P.2d 613. Barnes argues there was no finding by the trial court that keeping Porsche was unlawful before the adoption of the ordinance. However, as correctly noted by Board, there is no record that Barnes requested specific findings of fact.[2] A judgment based on a general finding presumes a finding in the prevailing party's favor on every disputed issue of material fact. See *Cloud v. Winn,* 1956 OK 267, 303 P.2d 305, citing *Nadel v. Zeligson,* 1953 OK ——, 252 P.2d 140. Moreover, Barnes did not sustain her burden of showing that keeping Porsche was not a nuisance or injurious to the neighborhood.

¶ 14  There is a presumption of correctness which attaches to the Board's decision. It will be accorded great weight and will not be disturbed on appeal unless it is

---

**2.** § 611. Findings of fact and conclusions of law
Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant, unless one of the parties request it,

with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state, in writing, the findings of fact found, separately from the conclusions of law.

**434**

clearly arbitrary or erroneous. See *Bankoff v. Board of Adjustment of Wagoner County*, 1994 OK 58, 875 P.2d 1138. The judgment of the district court was not clearly arbitrary or erroneous and is supported by the evidence.

¶15 AFFIRMED.

JOPLIN, J., and BUETTNER, P.J., concur.

