[Civ. No. 5578. Fourth Dist. Nov. 27, 1957.]

MIKE KELBER, Respondent, v. THE CITY OF UPLAND et al., Appellants.

[Civ. No. 5579. Fourth Dist. Nov. 27, 1957.]

B. F. HUNGERFORD et al., Respondents, v. THE CITY OF UPLAND et al., Appellants.

Henry M. Busch, City Attorney, for Appellants.

Kelber & Kelber for Respondents.

BARNARD, P. J.—These are actions to recover a refund of certain subdivision fees required of the plaintiffs by the defendant city as a condition for its approval of final subdivision maps. The defendant city is a city of the sixth class and the other defendants are the city manager and members of the city council. The actions, consolidated at the trial and on appeal, involve similar facts and identical principles of law.

These appeals involve the validity of two amendments to the city's subdivision control ordinance. One of these, adopted in May, 1952, provides as follows:

"That at the time of the approval of the final map of any subdivision or record of survey there shall be paid to the City of Upland, as a fee for such approval, the sum of Thirty and no/100 dollars ($30.00) per lot for each lot in said subdivision or record of survey. Said fee shall be placed in a fund with the City Treasurer of the City of Upland to be known and designated as "Park and School Site Fund." Funds derived from said fees and deposited in said fund shall thereafter be used and expended solely for the purpose of acquiring park and school sites in the City of Upland."

The other, adopted in January, 1954, after requiring drainage structures both inside and outside the subdivision "necessary to the proper use and public safety," further provides "In lieu of the construction of drainage structures outside the subdivision or record of survey the subdivider shall pay into a fund to be designated 'Subdivision drainage Fund,' the following fees for acreage contained within the subdivision." It then fixes a fee of $99.07 per acre for such residence property as is here involved.

The facts are undisputed. Briefly stated, the material facts in the first of these cases are as follows. The plaintiff owned about 15 acres within this city in an area zoned for residential development. In October, 1954, the plaintiff started proceedings to subdivide this land and in due course filed with the city an application for approval of the subdivision map. As a condition precedent to the granting of this application, and the approval of said map, the defendants required the plaintiff to pay as a fee for such approval the sum of $1,440 for the "Park and School Site Fund" mentioned in the first of these articles, and the further sum of $1,500 for the "Subdivision drainage Fund" mentioned in the other ordinance. These demands were made pursuant to the provisions of these two ordinances, and the defendants refused to approve said sub-

division map or permit the plaintiff to subdivide his property until and unless he first paid said sums for the purposes indicated in the ordinances. By reason of the requirements and demands thus made the plaintiff paid to the city of Upland a total sum of $2,940. These sums were paid by the plaintiff involuntarily and under protest, and under compulsion in the sense that they were paid in order that he might obtain the necessary approval of the subdivision map. The plaintiff complied with and fulfilled all conditions precedent to the granting of the application and the approval of said subdivision map as required by law or regulation. After the payment of the said $2,940 as contributions to these two funds the plaintiff's application was granted and his subdivision map was approved. Thereafter, the plaintiff subdivided his land and improved the same pursuant to all requirements for improvement and design as made by the defendants and under the law, and each and all of these improvements and design were approved by the defendants and accepted by the city. These improvements included provisions for local traffic and surface drainage of water upon and·from said land and subdivision, and the city accepted all dedications of public streets, alleys and easements provided for by said plans and map. Thereafter, the plaintiff made written demand for repayment and refund to him of the $2,940 thus paid, which demand was refused by the city. The plaintiff is the owner of other land in the city of Upland which he intends to subdivide and improve in the future, and the defendants intend to require him to make contributions to the two funds as provided for in these ordinances as a condition precedent to the granting of any application for approval of subdivision maps with respect to any other land owned by the plaintiff in said city.

The court found the facts above stated, among other things, and as conclusions of law found that the provisions of these two ordinances which require the payment of such sums as contributions to the "Park and School Site Fund" or the "Subdivision drainage Fund" of said city, as a condition precedent for the approval of a subdivision map, are void and of no force and effect; that the provisions of these ordinances are in conflict with the provisions of the Subdivision Map Act of this state; that the plaintiff is entitled to judgment against the city in the sum of $2,940; and that the plaintiff is entitled to a decree enjoining the defendants from attempting to enforce these provisions as a condition of its approving any application for subdivision maps of the property owned by

the plaintiff. Judgment was entered accordingly in each of these actions and the defendants have appealed from each of said judgments.

The appellants contend that the Subdivision Map Act (Bus. and Prof. Code, § 11500 et seq.) does not fully occupy the field of subdivision control; that such a city has the authority to adopt and enforce reasonable requirements which are not specifically set forth in the Map Act as a condition precedent to the approval of a subdivision map; and that such a city has authority to require the payment of fees in lieu of a dedication or an improvement as a condition precedent to the approval of a subdivision map, where the dedication or improvement required, or the payment of fees in lieu thereof, is reasonably related to the character of local and neighborhood planning. It is argued that the purpose of the city in requiring such contributions to funds established for the general benefit of the city, and to meet its growing needs, is in line with the modern tendency to extend the earlier concept of the police power as confined to matters of public peace, safety, morals and health so as to include the broader field of general welfare; that the ordinances here in question bear a reasonable relation to the problem sought to be solved by the requirement made; that if a city may require dedication and improvement in some cases it logically follows that it may require contributions in lieu of such dedication or improvement; that it would be impractical, unfair and arbitrary to require such small subdivisions as the ones here in question to provide areas for recreational purposes or general drainage structures, as they would be too small for any purpose and would not be in line with other plans of the city; and that the matter of subdivision of land is so closely allied with the matter of zoning and planning that the zoning and planning laws should have a controlling effect on the present problem.

The respondents contend that the state has fully occupied the field here in question; that a nonchartered city may regulate only the improvement and design of a subdivision within the city, and that only when this is done in conformity with state law and not in conflict therewith; that such a city may not enforce requirements which are more burdensome or restrictive than the state law; that the authority of the defendant city to impose conditions precedent to the approval of a subdivision map is limited to conditions reasonably related to "improvement" or "design" of the subdivision, as those

terms are defined and limited in the statute and cases; and that the city's requirements for the payment of moneys into the funds here in question, as a condition to its approval of this subdivision map, are in conflict with the Subdivision Map Act and impose conditions which are invalid.

The Subdivision Map Act permits the adoption of local ordinances as defined in the act and it has accordingly been held that such local ordinances may be adopted when they are supplemental to the act and are not in conflict therewith, and provided that they bear a reasonable relation to the purposes and requirements of the act. (*Clemons* v. *City of Los Angeles,* 36 Cal.2d 95 [222 P.2d 439] ; *McCarthy* v. *City of Manhattan Beach,* 41 Cal.2d 879 [264 P.2d 932] ; *Ayres* v. *City Council of Los Angeles,* 34 Cal.2d 31 [207 P.2d 1, 11 A.L.R.2d 503].) In the Ayres case in considering certain conditions requiring the dedication of small areas for street purposes, after pointing out that there was no specific limitation in the Subdivision Map Act forbidding these particular conditions, the court said: ". . . it is proper to conclude that conditions are lawful which are not inconsistent with the map act and the ordinances and are reasonably required by the subdivision type and use as related to the character of local and neighborhood planning and traffic conditions."

The question here is whether the ordinance amendments in question are of that nature, and whether they bear such a reasonable relation to the requirements of the act that they may properly be added as a condition precedent to the approval of such a map. In other words, the question is whether these provisions merely supplement the requirements of the statute in a reasonable way, or whether they materially change the requirements necessary for the approval of a map as fixed by the Legislature.

While the act specifically and impliedly permits the adoption of some local ordinances, relating to design and improvement, this is not an unlimited permission but is restricted to such local ordinances as come within the limitations contained in the act. Section 11611 of the act provides that the governing body shall approve the map if it conforms to all the requirements of this chapter and of any "local ordinance" which is applicable. Section 11506 provides that the words "local ordinance" refer to an ordinance regulating the design and improvement of subdivisions insofar as such regulations are consistent with and not in conflict with the provisions of the act. Section 11510 specifically states that

the word "design" refers to grades, alignment and widths of streets and of easements and rights of way for drainage and sanitary sewers, and to minimum lot area and width. Section 11511 provides that the word "improvement" refers only to such street work and utilities, to be installed on the land to be used for public or private streets, highways, ways, and easements, "as are necessary for the general use of the lot owners in the subdivision and local neighborhood traffic and drainage needs as a condition precedent to an approval and acceptance of the final map." Section 11525 provides that the control of the design and improvement of subdivisions is vested in the governing bodies of cities subject however to review as to its reasonableness by the superior court. It further provides that every city shall adopt an ordinance regulating and controlling the design and improvement of subdivisions. This is the only provision in this chapter requiring the enactment of a local ordinance. Section 11526 provides in part that the design and improvement of subdivisions, the content of final maps and the procedure to be followed in securing official approval are governed by the provisions of this chapter and by the additional provisions of local ordinances dealing with subdivisions, "the enactment of which is required by this chapter." Section 11551 provides that the subdivider shall comply with the provisions of a local ordinance if there is one before the map may be approved, and that where there is no local ordinance the governing body may, as a condition precedent to the approval of the map, "require streets and drainage ways properly located and of adequate width, but may make no other requirements." Section 11529 provides that the city engineer shall make the necessary detailed examination of final maps to enable him to make the certificate required by the statute, and that local ordinances may provide a proper and reasonable fee for such examination to be collected from the subdivider.

All of the references to local ordinances in the Subdivision Map Act relate to a local ordinance as defined in the statute, and to the design and improvement of subdivisions which are also defined in the statute. ▮ An intent rather clearly appears to limit, by these definitions, the authority of such a city to adopt local ordinances regulating subdivisions. Moreover, the only other provision in the act as to what a local ordinance may contain, which is also the only provision in the act permitting the imposition of a fee, is that in Section 11529 permitting a provision for a fee for the work of the city

engineer. The provisions here in question are not local ordinances regulating the design and improvement of a subdivision, as those terms are defined in the act. It rather clearly appears that these fee provisions are fund raising methods for the purpose of helping to meet the future needs of the entire city for park and school sites and drainage facilities, and that they are not reasonable requirements for the design and improvement of the subdivision itself. It seems obvious that this fund raising method is not related to the needs of this particular subdivision or to the matter of making proper connections between this subdivision and the adjoining area; that it is not reasonably required by the type and use of the subdivision as related to the character of local and neighborhood planning and traffic conditions; and that it is inconsistent with and conflicts with the provisions of the Subdivision Map Act which set forth the conditions and requirements necessary for obtaining an approval of the map.

 The purpose and intent of the Subdivision Map Act is to provide for the regulation and control of the design and improvement of a subdivision with a proper consideration of its relation to adjoining areas, and not to provide funds for the benefit of an entire city. The authority to adopt local ordinances containing requirements supplementary to the Map Act is limited by the terms of the statute. While the power of a city to adopt many regulations in connection with the matters covered by the statute may well be implied, even though not expressly stated, the power to require the payment of large fees or contributions for general city benefits as a condition of the approval of a map may not reasonably be implied, and it is entirely inconsistent with the language and apparent intent of the statute. The imposition of such fees as a condition for the approval of such a map not only bears no relation to the requirements indicated in the statute but would directly impede the realization of what appears to be the intent and meaning of the act. It follows that the fees here in question were illegally imposed and collected.

The judgments are affirmed.

Griffin, J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 23, 1958. Gibson, C. J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.