[L.A. No. 31338. July 16, 1981.]

THE PINES et al., Plaintiffs and Respondents, v.
CITY OF SANTA MONICA, Defendant and Appellant.

COUNSEL

Richard L. Knickerbocker, City Attorney, Steven S. Stark, Acting City Attorney, Kaplan, Livingston, Goodwin, Berkowitz & Selvin and Herman F. Selvin for Defendant and Appellant.

Paul, Hastings, Janofsky & Walker and Ronald M. Oster for Plaintiffs and Respondents.

OPINION

NEWMAN, J.—Plaintiffs, eight condominium developers, challenge the validity of the Santa Monica Condominium Tax Law and seek refund of taxes paid in the amount of $138,000 plus interest. The ordinance imposes a one-time charge of $1,000 per salable unit.

The trial court ruled that the tax was invalid because subdivision development and construction are matters of statewide concern, preempted by the Subdivision Map Act (Map Act) (Gov. Code, § 66410 et seq.). We do not agree.

The ordinance (Santa Monica Mun. Code, art. VI, ch. 6B, § 6650 et seq.) is called a "condominium business license tax" and is "imposed solely for revenue purposes." (*Id.*, § 6651.) All monies raised go into the

general fund. The $1,000 charge applies to each new condominium or condominium-conversion unit but not to previously sold units. (*Ibid.*)

At the times relevant here the ordinance was enforced by requiring either payment or execution of a lien agreement before issuance of a condominium license. The license, in turn, was prerequisite to all necessary project approvals and permits, including subdivision approval. (*Id.*, former § 6657.) It was unlawful to take any action to subdivide before the license was obtained. (*Id.*, former §§ 6652(b), 6654.)[1]

## SUBDIVISION MAP ACT

The Subdivision Map Act (Gov. Code, § 66410 et seq.) (Map Act) sets requirements for the development of subdivisions. It authorizes local governments to adopt conforming ordinances to "[r]egulat[e] and control . . . the design and improvement" of subdivisions. (§ 66411.) It sets suitability, design, improvement, and procedural requirements (e.g., § 66452 et seq., § 66473 et seq., § 66478.1 et seq.) and allows local governments to impose supplemental requirements of the same kind. (E.g., § 66475 et seq., § 66479 et seq.) It requires approval of a final map that conforms to conditions applicable when the tentative map was approved. (§§ 66458, 66473.)

When the project is a condominium conversion the act prescribes tenants' rights as preconditions to approval; but "[t]his section shall not [otherwise] diminish, limit, or expand" a government's authority "to approve or disapprove condominium projects." (§ 66427.1, subd. (e).)

Governments may impose "fees," reasonable in amount and fairly allocated, to defray costs of the approval process and construction of specified public works made necessary by the project. (§§ 66451.2, 66483 et seq.) No revenue taxes are imposed or prohibited by the act's words, and it contains no statement of intent to preempt local tax powers.

## PREEMPTION

Plaintiffs invoke the principle that legislation in an area of statewide concern preempts conflicting regulation by a charter city. (See *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979)

[1] In 1978, after the taxes at issue were paid, the ordinance was amended to eliminate all reference to subdivision rights and subdivision approvals.

23 Cal.3d 296, 315-316 [152 Cal.Rptr. 903, 591 P.2d 1]; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-62 [81 Cal.Rptr. 465, 460 P.2d 137].) They argue that by conditioning subdivision approvals on payment of a tax the Santa Monica ordinance contravenes the Map Act. We conclude that the two laws do not clash.

The taxation power is vital and is granted to charter cities by the Constitution. (Cal. Const., art. XI, § 5, subd. (a).) Their ability to impose revenue taxes can be curtailed only by the charter itself or when "in direct and immediate conflict with a state statute or statutory scheme." (*Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 392 [146 Cal.Rptr. 558, 579 P.2d 449].) That the state has preempted a field of statewide concern for purposes of regulation does not itself prevent local taxation of the persons or activities regulated. (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 139 [98 Cal.Rptr. 281, 490 P.2d 793]; *In re Groves* (1960) 54 Cal.2d 154, 156-157 [4 Cal.Rptr. 844, 351 P.2d 1028]; *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465, 477 [211 P.2d 564]; *In re Galusha* (1921) 184 Cal. 697, 699 [195 P. 406].)

Plaintiffs rely on decisions that have construed the Map Act as a limitation on local tax power. These opinions suggest that the authority granted to cities by the act is confined to regulation of subdivision design and improvement, including imposition of specified fees for project-related expenses. Hence, the courts hold, a broader local charge on subdivision approval is invalid because it interferes with the statutory scheme. (*Kelber* v. *City of Upland* (1957) 155 Cal.App.2d 631, 636-638 [318 P.2d 561]; see also, *Benny* v. *County of Alameda* (1980) 105 Cal.App.3d 1006, 1011 [164 Cal.Rptr. 776]; *Santa Clara County Contractors etc. Assn.* v. *City of Santa Clara* (1965) 232 Cal.App.2d 564, 572-578 [43 Cal.Rptr. 86]; *Newport Bldg. Corp.* v. *City of Santa Ana* (1962) 210 Cal.App.2d 771, 775-776 [26 Cal.Rptr. 797]; *Wine* v. *Council of City of Los Angeles* (1960) 177 Cal.App.2d 157, 170-171 [2 Cal.Rptr. 94]; cf. *Ayres* v. *City Council of Los Angeles* (1949) 34 Cal.2d 31, 37 [207 P.2d 1, 11 A.L.R.2d 503].)

*Kelber* and the cases following it contravene the principle that a tax for revenue is not invalid simply because it conditions the local exercise of a right or privilege articulated by the state. For example, cities may tax the privilege of doing work governed by a comprehensive state licensing scheme. (*In re Groves, supra,* 54 Cal.2d 154, 156-157 [milk products plant]; *In re Galusha, supra,* 184 Cal. 697, 699 [practice of

law]; *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108, 122-124 [132 Cal.Rptr. 796] [insurance broker].)

*Galusha* declared that "[t]he imposition of an occupational tax by a municipality upon those engaged in [occupations the state has licensed] is not an interference with state affairs. The mere compliance with certain prerequisites, in return for which [an occupational] license . . . is granted by the state, does not place a person beyond the range of additional regulation of the conditions upon which the license may be used. The municipality, in imposing an occupational tax upon [state-licensed professionals], is not interfering with state regulations, for it is not attempting to prescribe qualifications different from or additional to those prescribed by the state. It is merely providing for an increase in its revenue by imposing a tax on those who, by pursuing their profession within its limits, are deriving benefits from the advantages especially afforded by the city . . . ." (184 Cal. at p. 699, quoted in *Groves, supra*, 54 Cal.2d at p. 157.)

California courts also have been ready in other contexts to uphold local taxes against arguments that they conflict with state regulation. *Rivera* v. *City of Fresno, supra*, 6 Cal.3d 132 rejected contentions that a local utility user's tax, collectible by the utility, "invades the field of regulation of public utilities" preempted by the state. (P. 139.) And state proscriptions of local use of certain tax methods have been construed narrowly. (*Weekes* v. *City of Oakland, supra*, 21 Cal.3d 386, 392-398 [employer-collected, gross-receipts tax on commuter's income within city is not a prohibited income tax]; *A.B.C. Distributing Co.* v. *City and County of San Francisco* (1975) 15 Cal.3d 566, 570-576 [125 Cal.Rptr. 465, 542 P.2d 625] [liquor retailer not exempt from general payroll tax despite prohibition of local taxation of income and manufacture, importation, and sale of alcohol]; *Ainsworth* v. *Bryant, supra*, 34 Cal.2d 465 [use tax on personalty not in conflict with prohibition of alcohol tax]; but cf. *Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d 616, 620-624 [87 Cal.Rptr. 166] ["tippler's" tax invalid].)

Cases where license-tax ordinances were struck down as preempted are distinguishable. *Lynch* v. *City of Los Angeles* (1952) 114 Cal.App. 2d 115 [249 P.2d 856], *Agnew* v. *City of Los Angeles* (1958) 51 Cal.2d 1 [330 P.2d 385], and *Agnew* v. *City of Culver City* (1959) 51 Cal.2d 474 [334 P.2d 571] invalidated ordinances requiring additional licenses for state-licensed contractors doing business in those cities. As ex-

plained in *Groves, supra*, 54 Cal.2d 154, each ordinance imposed not only license fees but substantive regulations beyond those provided by the state scheme. Because the ordinances affected aspects of regulation already covered by state law they were preempted. (54 Cal.2d at p. 157; see also *County of Los Angeles* v. *City of Alhambra* (1980) 27 Cal.3d 184, 189-193 [165 Cal.Rptr. 440, 612 P.2d 24].)

*Biber Electric Co., Inc.* v. *City of San Carlos* (1960) 181 Cal.App.2d 342 [5 Cal.Rptr. 261] (ordinance requiring business-license sticker on commercial vehicles and $1 fee per business vehicle if more than one) and *In re Lane* (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897] (ordinance that proscribed going from one room to another for purposes of sexual intercourse with a person other than spouse) found preemption by virtue of parallel state regulation of the conduct or business sought to be regulated locally. Those rulings do not conflict with our analysis here.

■ Plaintiffs urge that when the Legislature without material change recodified the Map Act in 1974 it ratified the *Kelber* doctrine. They invoke the canon that reenactment of a statute in substantially identical language adopts prior judicial constructions. (E.g., *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 774 [144 Cal.Rptr. 758, 576 P.2d 473]; *Los Angeles Met. Transit Authority* v. *Brotherhood of Railroad Trainmen* (1960) 54 Cal.2d 684, 688-689 [8 Cal.Rptr. 1, 355 P.2d 905].)

The canon is inapplicable in this case. Local taxes generally do not conflict with state regulatory laws. The Map Act's words do not deal with local taxes, and there is no evidence that the matter was before the Legislature in 1974. (Cf. *Bishop* v. *City of San Jose, supra*, 1 Cal.3d 56, 64-65.) Because the tax power is so fundamental, state intent to preempt it must be clear. (*Weekes* v. *City of Oakland, supra*, 21 Cal.3d 386, 392 ["direct and immediate conflict"]; see also *A.B.C. Distributing Co.* v. *City and County of San Francisco, supra*, 15 Cal.3d 566, 571 [plenary tax power subject only to express limitation].) We should not infer that, because the Legislature when it reenacted a comprehensive statute failed to address this specific topic, it intended to preempt local subdivision taxes.

Similarly we reject plaintiffs' contention that, because bills on the preemption issue failed to pass in 1971 and 1972, the Legislature intended to endorse existing case law. The legislation sought (Sen. Bill

No. 1118 (1972 Reg. Sess.) § 4 and Assem. Bill No. 1375 (1971 Reg. Sess.) § 4) would have declared that the Map Act preempts only matters of state-wide interest and grants local governments maximum control over subdivision design and improvement. The proposals were not addressed to the local-tax problem. They were small parts of bills seeking to recodify the entire Map Act—an effort finally successful in 1974. Under the circumstances, this failure to adopt proposed amendments to the statute has limited probative value regarding the Legislature's original intent. (See *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 62-63 [152 Cal.Rptr. 153]; *Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal. App.3d 243, 248 [136 Cal.Rptr. 508]; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 58 [69 Cal.Rptr. 480]; Newman & Surrey, Legislation (1955) p. 649 ("Proposed amendments") and p. 658 ("Legislative silence").)

The Map Act contains no language granting or limiting local tax power. And no one contends that the Santa Monica condominium ordinance was adopted under authority of the Map Act.[2] The ordinance recites that the tax is solely for revenue purposes. (§ 6651.)

■ Plaintiffs argue that the ordinance contravened the Map Act by conditioning subdivision approval on payment of the tax. But the licensing and approval features are means of revenue enforcement; no regulatory requirements beyond those authorized by the Map Act are imposed as licensing conditions. (See *Groves, supra,* 54 Cal.2d at pp. 156-158; *City of Los Angeles* v. *A.E.C. Los Angeles* (1973) 33 Cal. App.3d 933, 940 [109 Cal.Rptr. 519]; *Arnke* v. *City of Berkeley* (1960) 185 Cal.App.2d 842, 848-849 [8 Cal.Rptr. 645].) The power to tax includes power to prescribe reasonable means of enforcement. (See *Rivera* v. *City of Fresno, supra,* 6 Cal.3d 132, 139; *Ainsworth* v. *Bryant, supra,* 34 Cal.2d 465, 477.)

Plaintiffs contend the ordinance has had the effect of discouraging condominium development. But that does not compel a conclusion that the tax regulates. Most taxes burden the activities they assess, and as judges we do not test the wisdom of legislation. (See *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 869 [76 Cal.Rptr. 642, 452 P.2d 930]; *Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 359 [55 Cal.Rptr. 23, 420 P.2d 735].)

---

[2]The city has adopted a local subdivision ordinance under the act's authority.

Thus the ordinance here imposes a revenue tax that does not conflict with the state scheme for regulating subdivisions.[3] To the extent that *Benny, Santa Clara County Contractors Assn., Newport Bldg. Corp., Wine,* and *Kelber,* all *supra* (p. 660), imply a contrary result they are disapproved.

The judgment is reversed.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., and Murphy, J.,* concurred.

**MARSHALL (A. K.), J.***—I concur in the conclusion of the majority opinion.

We must take judicial notice of the desperate shortage of housing in California. Such shortage is a matter of "state-wide concern." (See Gov. Code, § 65580.) Whether the imposition of the tax by Santa Monica contributed to the shortage would therefore also be a matter of "state-wide concern." (See *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 62 [81 Cal.Rptr. 465, 460 P.2d 137].) The city contends that its tax is only "a municipal affair" and that it has the constitutional right to levy the tax.[1] The appellants-developers contend that the Subdivision Map Act preempts the tax ordinance and that such ordinance is in conflict with the Map Act.

Even assuming arguendo, that the Legislature has the power to preempt a taxing ordinance of a municipality from conflicting with a statute, the Subdivision Map Act contains no expressly stated prohibition of local taxation. Hence, there is no *express* provision with which the municipal ordinance can be said to be in conflict. However, from the Legislature's statutory promulgation of rules for the governance of condominium construction, we must conclude that the Legislature plainly expects that condominiums will be built and only constrains such

---

[3]So holding, we need not reach the city's argument that local taxation is a "municipal affair" in which legislation by a charter city prevails over conflicting state law. (*Bishop* v. *City of San Jose, supra,* 1 Cal.3d 56, 61; *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 99 [308 P.2d 1].)

*Assigned by the Chairperson of the Judicial Council.

[1]California Constitution, article XI, section 5, subdivision (a) grants chartered municipalities the power to make all ordinances necessary for the government of the city, which includes the right to tax. (See *West Coast Advertising Company* v. *San Francisco* (1939) 14 Cal.2d 516, 524 [95 P.2d 138].)

building in the manner prescribed by the statute. Therefore, such prohibition may be inferred.

Although Santa Monica has the undoubted power to tax for local purposes (see Cal. Const., art. XI, § 5, subd. (a)), if such tax is in "*direct* and *immediate* conflict with a state statute or statutory scheme," (italics added) the ordinance must be constrained. (*Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 392 [146 Cal.Rptr. 558, 579 P.2d 449]; see *Bishop* v. *San Jose, supra*, 1 Cal.3d 56.)

Even though a "conflict" may be inferred as above reasoned, such conflict cannot be termed "direct and immediate." Evidence of the prohibitory nature of the tax is offered in the form of data indicating a drop in construction starts. If such is the effect of the tax, it is argued that the conflict is "direct and immediate." Yet, the "direct and immediate" effect is on the number of units built and not on the subject matter of the statute which deals with mapping, methods of construction, and related requirements affecting the creation of subdivisions. Further, the evidence as to the impact of the ordinance is not conclusive; the decline in construction may have been caused by other circumstances, such as spiraling and rampant inflation or condominium builders' tax rebellion.[2]

In summation, the ordinance does not exert a direct and immediate effect upon the general subject matter of the statute, i.e., the method and scope of construction of subdivisions. Further, even though we put aside the requirement (of direct and immediate effect) and seek proof of any conflict, direct or indirect, the evidence that such ordinance was the cause of the decline in construction, and therefore conflicting, is not convincing.

---

[2]It is to be noted that the United States Supreme Court has declared that a tax may not be unconstitutional even though so burdensome as to render a business unprofitable or even destroy a business enterprise (*Pittsburgh* v. *Alco Parking Corporation* (1974) 417 U.S. 369 [41 L.Ed.2d 132, 94 S.Ct. 2291]).