852 F.2d 1123
 PRICE DEVELOPMENT COMPANY, a Utah corporation,
Plaintiff-Appellant-Cross-Appellee,
v.
REDEVELOPMENT AGENCY OF the CITY OF CHINO, CALIFORNIA, a
public agency, and Haagen-Chino Partnership, a
California partnership,
Defendants-Appellees-Cross-Appellants.
 Nos. 87-6037, 87-6232.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 3, 1988.
Decided July 22, 1988.
 
 Eric Olson, Halstead, Baker & Olson, Los Angeles, Cal., for plaintiff-appellant-cross-appellee.
 Daniel K. Spradlin, Rourke & Woodruff, Orange, Cal., for defendants-appellees-cross-appellants.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, KOZINSKI and THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Price Development Company brought suit for reimbursement of a $200,000 option deposit it paid to the Redevelopment Agency of the City of Chino, California as part of an exclusive negotiating agreement. The district court granted summary judgment in favor of the Agency, and Price appeals. The Agency cross-appeals from the district court's order denying its motion for an award of attorney fees. We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 
 2
 * FACTS
 
 
 3
 In 1984, the Agency engaged in efforts to develop a 41-acre parcel of land in Chino, California into a commercial shopping center. The property was then owned by Peter Borba & Sons ("the Borbas"). On April 2, 1985, the Agency entered into a Purchase and Sale Agreement with the Borbas to acquire the 41-acre parcel. The agreement required the Agency to pay a $200,000 option deposit to the Borbas, which would be forfeited as liquidated damages in the event escrow failed to close by September 3, 1985.
 
 
 4
 On the same day the Agency entered into the Purchase and Sale Agreement with the Borbas, Price and the Agency entered into a First Amended Agreement to Negotiate Exclusively ("negotiating agreement"). Pursuant to paragraph I.C of this agreement, Price agreed to advance to the Agency the $200,000 deposit it was required to pay to the Borbas. In exchange for the $200,000, the Agency agreed to negotiate exclusively with Price for a 6-month period in an effort to reach a Disposition and Development Agreement ("DDA") pursuant to which the Agency would convey the Borba property to Price which would then develop it into a shopping center, hotel, offices and other uses.
 
 
 5
 In an effort to reduce its risk of forfeiting the $200,000, Price insisted on the inclusion of paragraph I.C(2) of the negotiating agreement. This provision required the Agency, in the event a DDA was not reached, to reimburse Price, "to the extent legally permissible," the $200,000 out of the proceeds of an "assessment or development fee" to be levied on any subsequent developer of the project. The provision reads, in relevant part:
 
 
 6
 Agency shall, to the extent legally permissible, reimburse [Price] the full amount of the [$200,000] Deposit (without interest) out of the proceeds of an assessment or development fee to be imposed on any subsequent developer(s) of the [subject property]; provided, that (i) in no event shall the Deposit reimbursement be a personal obligation of the Agency itself or be payable out of any source other than the source specified herein, and [Price's] sole remedy for any Agency breach shall be appropriate equitable relief to compel Agency to impose the assessment or development fee on the subsequent developer(s); (ii) Agency makes no representation or warranty regarding the validity of any such assessment or fee, and specifically represents that it has made no investigation and conducted no research on that subject; and (iii) the details of and the mechanism for such assessment or development fee shall be negotiated during the exclusive negotiation period of this Agreement.
 
 
 7
 The Agency and Price were unable to agree upon the terms of a DDA. On September 3, 1985, the negotiating agreement expired by its own terms and the $200,000 was forfeited to the Borbas. The Agency subsequently entered into a DDA concerning the Borba property with a different developer, Haagen-Chino Partnership ("Haagen"). The Agency did not impose an assessment or development fee on Haagen and was otherwise unable to get Haagen to pay Price the $200,000.
 
 
 8
 Price brought suit to specifically enforce what it alleged to be the Agency's obligation to reimburse Price the $200,000. Price alternatively sought to establish and foreclose an equitable lien for $200,000 upon the Borba property, or to impose on the property a constructive trust.
 
 II
 ANALYSIS
 A. Specific Performance
 
 9
 We review the district court's grant of summary judgment de novo. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). In this diversity of citizenship case, we apply the substantive law of the forum state, California. See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).
 
 
 10
 When interpreting the terms of a contract, we look first to the language used in the contract. See Cochran v. Union Lumber Co., 26 Cal.App.3d 423, 426, 102 Cal.Rptr. 632, 634 (1972). According to the express terms of paragraph I.C(2) of the negotiating agreement, the Agency agreed "to the extent legally permissible" to reimburse Price the $200,000 deposit out of the proceeds of an "assessment or development fee" to be imposed on any subsequent developer. The Agency contends the assessment provision is not specifically enforceable because the details of the mechanism for imposing the assessment or development fee were never fully negotiated.
 
 
 11
 California courts have specifically enforced agreements that have not expressly contained all of the terms agreed upon. See, e.g., Goodwest Rubber Corp. v. Munoz, 170 Cal.App.3d 919, 216 Cal.Rptr. 604 (1985) where, in reversing a judgment denying specific performance when the contract called for payment at "market value," the court stated:
 
 
 12
 The modern trend of the law is to favor the enforcement of contracts, to lean against their unenforceability because of uncertainty, and to carry out the intentions of the parties if this can feasibly be done. Neither law nor equity requires that every term and condition of an agreement be set forth in the contract.
 
 
 13
 Id., 170 Cal.App.3d at 921, 216 Cal.Rptr. at 605 (emphasis added). If non-essential terms of a contract are left for future agreement, the contract is still enforceable. City of Los Angeles v. Superior Court, 51 Cal.2d 423, 433, 333 P.2d 745, 750 (1959).
 
 
 14
 We do not believe the details regarding the mechanism for assessing the $200,000 fee on Haagen were such an essential element of the agreement as to make it unenforceable in the absence of their inclusion in the contract. Under the terms of the agreement, however, the Agency was required to exact reimbursement of the $200,000 "to the extent legally permissible." Redevelopment agencies are governed by the Community Redevelopment Law, Cal. Health & Safety Code Secs. 33000 et seq. (West 1973 and Supp.1988) ("Redevelopment Act"). Being a creature of statute, a redevelopment agency may engage only in those activities authorized by statute including, for example, acquiring and managing real property, Cal. Health & Safety Code Secs. 33390-33402, clearing and developing property, id. Secs. 33420-33422 and disposing of real property for public housing projects, id. Sec. 33442.
 
 
 15
 There is no provision in the Redevelopment Act allowing a redevelopment agency to levy an assessment on real property or on a developer of property for the purpose of reimbursing money to another developer. An assessment proceeding is "an administrative procedure provided by the Legislature to enable authorized governmental entities to provide public improvements of special benefit to only a limited area and to spread the costs upon the lands so benefited in proportion to the benefits conferred." County of Riverside v. Whitlock, 22 Cal.App.3d 863, 874, 99 Cal.Rptr. 710, 718 (1972). The only assessment provisions contained in the Redevelopment Act applicable to a redevelopment agency are found in Health & Safety Code Secs. 33800-33855 (West Supp.1988) and pertain to payment of certain indebtedness incurred prior to July 1, 1978. These provisions have no application to the present case.
 
 
 16
 Price has also failed to establish that Agency could have legally imposed a development fee upon Haagen. The term "development fee" is generally used to describe a funding mechanism by which a fee is imposed, in lieu of dedication of land, upon a developer by a local agency as a prerequisite for approval of subdivision plans. See Cal.Gov.Code Secs. 66410-66499.58 (West 1983 and Supp.1988) ("Subdivision Map Act"). The California legislature has restricted the exaction of development fees to those "reasonably required to regulate and benefit the particular subdivision." B & P Development Corp. v. City of Saratoga, 185 Cal.App.3d 949, 962, 230 Cal.Rptr. 192, 201 (1986). A redevelopment agency generally may not exact development fees that are not specifically authorized by the Subdivision Map Act. Id. at 955, 230 Cal.Rptr. at 196. See also Associated Home Builders, Inc. v. City of Walnut Creek, 4 Cal.3d 633, 647, 484 P.2d 606, 617, 94 Cal.Rptr. 630, 641, appeal dismissed, 404 U.S. 878, 92 S.Ct. 202, 30 L.Ed.2d 159 (1971) (development fees may be utilized only for purposes related to the acquisition and improvement of land).
 
 
 17
 In the present case, a development fee imposed on Haagen for the purpose of reimbursing Price its deposit is neither authorized by the Subdivision Map Act nor does it bear a reasonable relationship to the "[r]egulation and control of the design and improvement of [a] subdivision ..." as required by Cal.Gov.Code Sec. 66411 (West 1983). Although a municipality may adopt local ordinances containing requirements supplementary to the Subdivision Map Act, see Cal.Gov.Code Sec. 66411 (West 1983), the Agency did not adopt an ordinance or resolution permitting the reimbursement, nor was it empowered to do so. See Santa Clara County Contractors Ass'n v. City of Santa Clara, 232 Cal.App.2d 564, 575, 43 Cal.Rptr. 86, 91 (1965) (authority to adopt ordinances supplementary to Map Act limited by terms of the statute) (but see The Pines v. City of Santa Monica, 29 Cal.3d 656, 664, 630 P.2d 521, 525, 175 Cal.Rptr. 336, 340 (1981) (disapproving Santa Clara to the extent it forbids ordinance imposing a revenue tax not in conflict with state's scheme for regulating subdivisions)).
 
 
 18
 Finally, Price has failed to demonstrate the legality of imposing any other kind of development fee not envisioned by the Redevelopment Act, such as an "impact fee." Impact fees are charges levied by local governments against new development to generate revenue for capital funding necessitated by that development. See Juergensmeyer & Blake, Impact Fees: An Answer to Local Governments' Capital Funding Dilemma, 9 Fla.St.U.L.Rev. 415, 417 (1981). We are aware of no legislative delegation of authority for imposition of an impact fee for the purpose of reimbursement of an option deposit. Because Price has failed to demonstrate a legally permissible method by which the Agency could have imposed an assessment or development fee upon the subsequent developer, Haagen, specific performance of the assessment provision is not a viable remedy.
 
 B. Equitable Lien and Constructive Trust
 
 19
 Section I.C(2)(i) of the negotiating agreement provided for an exclusive remedy in case of breach: "Developer's sole remedy for any Agency breach shall be appropriate equitable relief to compel Agency to impose the assessment or development fee on the subsequent developer(s)." (emphasis added). A clear and unambiguous contractual provision providing an exclusive remedy for breach will be enforced. See Michael & Pfeffer v. Oceanside Properties, Inc., 61 Cal.App.3d 433, 443, 132 Cal.Rptr. 179, 184 (1976). Price's claims for imposition of an equitable lien and constructive trust are not claims to compel the Agency to impose an assessment or development fee, but rather are claims upon the Borba property--claims not authorized by the terms of the contract.
 
 
 20
 Courts may subject property to equitable liens and constructive trusts to prevent unjust enrichment. See Beckman v. Mayhew, 49 Cal.App.3d 529, 534, 122 Cal.Rptr. 604, 607 (1975) (equitable lien); Martin v. Kehl, 145 Cal.App.3d 228, 237, 193 Cal.Rptr. 312, 317 (1983) (constructive trust). The $200,000 paid by Price was not used to improve the Borba property, nor did it reduce the purchase price. Rather, it was used as expected: to keep the property available during negotiations between Price and the Agency. There has been neither unjust enrichment nor wrongful acquisition of Price's property.
 
 
 21
 For the foregoing reasons, there is no basis for imposition of an equitable lien or constructive trust.
 
 III
 CROSS-APPEAL
 Attorney Fees
 
 22
 The Agency seeks $66,460 in attorney fees pursuant to paragraph I.C(4) of the negotiating agreement which reads as follows:
 
 
 23
 Developer agrees to indemnify, defend and hold Agency harmless from and against any claim or liabilities arising out of Agency's failure or refusal to close escrow under the Purchase and Sale Agreement if a proximate cause of such failure or refusal is (i) the failure of Agency and Developer to enter into a Disposition and Development Agreement, provided that Agency has not committed a material default or breach under this Agreement, or (ii) a material default or breach by Developer under the Disposition and Development Agreement or Developer's failure to satisfy a condition thereunder to the close of escrow between Agency and Developer.
 
 
 24
 There are two reasons why attorney fees are not recoverable in this action. First, as noted by the district court, under Fed.R.Civ.P. 16(e), the pretrial conference order controls the course of the litigation, and the order in this case, as well as the Agency's memorandum of contentions and other pleadings, contained no indication that the Agency would be seeking an award of attorney fees. "Particular evidence or theories which are not at least implicitly included in the [pretrial] order are barred unless the order is first 'modified to prevent manifest injustice.' " United States v. First Nat. Bank, 652 F.2d 882, 886-87 (9th Cir.1981). There was no abuse of discretion by the district court in denying the Agency's motion for attorney fees on this ground.
 
 
 25
 Secondly, it appears the indemnity provision of paragraph I.C(4) was included as a contingency in the event the Agency failed to close the Purchase and Sale Agreement with the Borbas. Subparagraph (4) refers to "claims or liabilities arising out of Agency's failure or refusal to close escrow under the Purchase and Sale Agreement." Price does not allege that the escrow failed to close. Price's action sought to compel the Agency to impose an assessment or development fee under the negotiating agreement. The indemnity provision in the Purchase and Sale Agreement is not the equivalent of an attorney fees clause and does not entitle the Agency to recover fees from Price in this litigation.
 
 
 26
 Finally, we are constrained to comment upon the substantial expenditure of attorney fees in this case, $66,460 for the Agency and $45,000 for Price in the district court plus fees for this appeal. The amount is not overwhelming given the nature of this case. But it seems to us that if both parties had taken a little more time to research the applicable law and to draft specific provisions as to how the $200,000 deposit might have been legally recouped, or how it would have been dealt with if it could not have been recouped, they could have saved themselves and the courts a lot of time and money. One gets the impression that the parties wanted to get on with the substance of their property development negotiations, rather than quibble about the remedial portions of their contract. After all, provisions of a contract dealing with remedies come into play only if a deal falls through. This one did.
 
 
 27
 AFFIRMED.