TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-713 |
| of | : | |
| | : | January 5, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney | : | |
| General | | |
| | : | |

THE HONORABLE KENNETH L. MADDY, MEMBER OF THE CALIFORNIA SENATE, has requested an opinion on the following question:

In addition to its receipt of a designated portion of the Del Mar Track parimutuel wagering handle, may the City of Del Mar impose an admissions tax on events held at the Del Mar Fairgrounds that do not involve live horse racing or satellite wagering?

CONCLUSION

In addition to its receipt of a designated portion of the Del Mar Track parimutuel wagering handle, the City of Del Mar may not impose an admissions tax on events held at the Del Mar Fairgrounds that do not involve live horse racing or satellite wagering.

ANALYSIS

Since 1960 the City of Del Mar ("Del Mar") has imposed an admissions tax on persons attending certain activities within the city. The party conducting the event is not subject to the tax but is responsible for its collection and transmission to the city.

The question presented for resolution is whether Del Mar may impose an admissions tax on events held at the Del Mar Fairgrounds ("Fairgrounds") that do not involve live horse racing or satellite wagering when it has previously elected to receive a designated portion of the Del Mar Track parimutuel wagering handle. We conclude that such an

election precludes the collection of an admissions tax with respect to the events in question.

The 22nd District Agricultural Association ("Association") conducts the Del Mar Fair in June and July and contracts with the Del Mar Thoroughbred Club, a California corporation, to operate a separate horse racing meeting in July, August, and September. The Association's staff operates a satellite wagering facility throughout the year. (See. Bus. & Prof. Code, §§ 19400-19667; Food & Agr. Code, §§ 3801-4363.) **Footnote No. 1** The Association also contracts with various organizations to conduct events at the Fairgrounds, such as antique shows, art shows, and toy shows, again throughout the year. The Association's property is located in Del Mar.

Three statutes require our analysis. Section 19610.3 provides:

"In addition to the amounts required or allowed to be deducted from the parimutuel pools as provided by this chapter, and except as otherwise provided in this section, every association that conducts a racing meeting may elect permanently to deduct an additional amount up to 0.33 of 1 percent from the total parimutuel wagers within its inclosure. This election is not available to the California Exposition and State Fair or to a county or district agricultural association fair unless, prior to January 1, 1984, the city or county in which the fair meeting was being conducted levied a license fee or excise tax pursuant to Section 19495 or imposed an admission tax on track patrons.

"The amounts deducted pursuant to this section shall be retained by the association or fair for the payment of possessory interest taxes, if any, assessed against the organization described in Section 19608.2, the racing association, or fair, and after payment of these taxes shall be distributed to the city in which the racing meeting is conducted or, if the meeting is conducted outside the limits of any city, to the county in which the racing meeting is conducted. *If a city or county has elected by ordinance to receive a distribution from a racing association under this section, it shall not at any time thereafter assess or collect, with respect to an event conducted by that racing association, or an event conducted by or by contract with that association or fair, any license or excise tax or fee, including, but not limited to, any admission, parking, or business tax, or any tax or fee levied solely upon the racing association conducting a racing meeting or any racing patron, participant, service-supplier, promoter, or vendor thereof.* Further, a city or county electing to receive a distribution under this section shall continue to provide ordinary and traditional municipal services, such as police services and traffic control, in connection with racing meetings. `Ordinary and traditional services,' as used in this section, means those services provided by the city or county at no charge to the racing association in 1981. If an eligible city or county does not elect to receive a distribution under this section, the amount remaining after payment of possessory interest taxes, if any, as provided in this section shall be paid to the state as an additional license fee." (Italics added.) **Footnote No. 2**

Section 19610.4 states:

"Notwithstanding Section 19610.3, any association that conducts a racing meeting pursuant to Section 19549.3 or 19549.9, or any fair that operates a satellite wagering facility, may elect to deduct an additional amount of 0.33 of 1 percent from the total parimutuel wagers placed within its inclosure or at its satellite wagering facility.

"The amounts deducted pursuant to this section shall be retained by the association or fair for the payment of possessory interest taxes, if any, assessed against the organization described in Section 19608.2, the racing association, or fair, and after payment of these taxes shall be distributed to the city or county in which the racing meeting or wagering is conducted, at the option of the association or fair. *If a city or county has elected by ordinance to receive a distribution from a racing association or fair under this section, it shall not at any time thereafter assess or collect, with respect to an event conducted by that racing association or, an event conducted by or by contract with that fair, any license or excise tax or fee, including, but not limited to, any admission, parking, or business tax, or any tax or fee levied solely upon the racing association or fair conducting a racing meeting or satellite wagering, or any patron, participant, service-supplier, promoter, or vendor thereof.* Further, a city or county electing to receive a distribution under this section shall provide ordinary and traditional municipal services, such as police services and traffic control, in connection with the racing meetings or satellite wagering. If an eligible city or county does not elect to receive a distribution under this section, the amount remaining after payment of possessory interest taxes, if any, as provided in this section shall be paid to the state as an additional license fee." (Italics added.) **Footnote No. 3**

Section 19610.6 provides:

"Notwithstanding Section 19605.71, and in lieu of any deduction under Section 19610.3 or 19610.4, the 22nd District Agricultural Association shall deduct an additional amount of 0.33 of 1 percent from the total parimutuel wagers placed at its satellite wagering facility.

"Forty percent of the amount deducted pursuant to this section shall be distributed to the City of Del Mar and 40 percent shall be distributed to the City of Solana Beach, if the respective city has elected to receive a distribution under this section. The remaining amounts deducted pursuant to this section shall be distributed to the San Dieguito River Valley Regional Open Space Park Joint Powers Authority, which is established for the enhancement of the San Dieguito River Valley and Lagoon. If the San Dieguito River Valley Regional Open Space Park Joint Powers Authority is dissolved, the distribution of the remaining amounts deducted pursuant to this section shall be distributed to the County of San Diego. *If the City of Del Mar or the City of Solana Beach has elected by ordinance to receive a distribution from a fair under this section, it shall not at any time thereafter assess or collect, with respect to an event conducted by that fair, any license or excise tax or fee, including, but not limited to, any admission, parking, or business tax, or any tax or fee levied solely upon the fair conducting satellite wagering or any patron thereof.* Furthermore, a city electing to receive a distribution under this section shall provide ordinary and traditional municipal services, such as police services and traffic

control, in connection with the satellite wagering. If an eligible city does not elect to receive a distribution under this section, the amount deducted shall be paid to the state as an additional license fee." (Italics added.) **Footnote No. 4**

We are not dealing here with whether Del Mar *could* impose an admissions tax on events held at the Fairgrounds that do not involve live horse racing or satellite wagering. (See *The Pines* v. *City of Santa Monica* (1981) 29 Cal.3d 656; *Weekes* v. *City of Oakland* (1978) 21 Cal.3d 392; *Oakland Raiders* v. *City of Berkeley* (1976) 64 Cal.App.3d 623; *Board of Trustees* v. *City of Los Angeles* (1975) 49 Cal.App.3d 45; *Century Plaza Hotel Co.* v. *Los Angele*s (1970) 7 Cal.App.3d 616; 68 Ops.Cal.Atty.Gen. 114 (1985); 31 Ops.Cal.Atty.Gen. 46 (1958); 15 Ops.Cal.Atty.Gen. 67 (1950).) Rather, Del Mar has elected to receive the designated portion of the parimutuel wagering handle specified in sections 19610.3 and 19610.6. As a consequence of these elections, is Del Mar precluded from collecting the admissions tax in question?

Because Del Mar "has elected by ordinance to receive a distribution from a racing association under" section 19610.3,

". . . it shall not at any time thereafter assess or collect, with respect to an event conducted by that racing association, or an event conducted by or by contract with that association or fair, any license or excise tax or fee, including, but not limited to, any admission, parking, or business tax . . . ." (§ 19610.3.)

The Association constitutes a "fair" for purposes of section 19610.3, since the operation of the Del Mar Fair is one of its primary functions. In this context, "fair" must mean a district agricultural association that conducts a fair. Does the phrase "an event conducted by that racing association, or an event conducted by or by contract with that association or fair" require that the event take place during and in conjunction with the operation of a horse racing meeting or fair in order to qualify under the terms of section 19610.3? We have examined the legislative history of section 19610.3, particularly with respect to its amendment in 1995 (Stats. 1995, ch. 959, § 3) which added the phrase "or an event conducted by or by contract with that association or fair," and have found no such limitation. Rather, the legislative committee reports refer to "any other taxes or fees that might otherwise be assessed." Use of the indefinite article "an" in "an event" means any event without limitation or qualification. We may not add the phrase "involving live horse racing or satellite wagering" in the guise of statutory construction. (See *Wells Fargo Bank* v. *Superior Court* (1991) 53 Cal.3d 1082, 1097 ["a statute `. . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language that they are to disregard any of its express provisions'"].) Accordingly, no event conducted under contract with the Association may be subject to an admissions tax by Del Mar.

Our analysis of section 19610.3 thus answers the question presented. In return for receiving the specified distribution of the wagering proceeds under this statute, Del Mar must forego imposing its own taxes and fees upon events operated by the Association or

conducted under contract with the Association. The choice is Del Mar's and may be made in consideration of its best economic interests.

While section 19610.3 controls the distribution of wagering proceeds at the horse racing meeting conducted on the Association's property, sections 19610.4 and 19610.6 control the distribution of wagering proceeds from the operations of a satellite wagering facility. With respect to the satellite wagering facility on the Association's property, the more recent and specific language of section 19610.6 controls over the more general language of section 19610.4. (See Code Civ. Proc., § 1859; *Woods* v. *Young* (1991) 53 Cal.3d 315, 325; *Freemont Comp. Ins. Co.* v. *Superior Court* (1996) 44 Cal.App.4th 867, 873.) Hence, Del Mar receives only 40 percent of the special deduction rather than 100 percent. Both statutes have restrictions on imposing local taxes and fees similar to the language of section 19610.3:

". . . If a city . . . has elected by ordinance to receive a distribution from a racing association or fair under this section, it shall not at any time thereafter assess or collect, with respect to an event conducted by that racing association or, an event conducted by or by contract with that fair, any license or excise tax or fee, including, but not limited to, any admission, parking, or business tax, . . ." (§ 19610.4.)

". . . If the City of Del Mar . . . has elected by ordinance to receive a distribution from a fair under this section, it shall not at any time thereafter assess or collect, with respect to an event conducted by that fair, any license or excise tax or fee, including, but not limited to, any admission, parking, or business tax, . . ." (§ 19610.6.) **Footnote No. 5**

We conclude that in addition to its receipt of a designated portion of the Del Mar Track parimutuel wagering handle, Del Mar may not impose an admissions tax on events held at the Del Mar Fairgrounds that do not involve live horse racing or satellite wagering.

* * * * *

---

**Footnote No. 1**
All references hereafter to the Business and Professions Code are by section number only.

**Footnote No. 2**
"Section 19495" generally prohibits the collection of a license tax, excise tax, or fee in excess of $100 per racing day from the operator of a horse racing meeting. "The organization described in Section 19608.2" is one that is formed by an association or fair to operate the audiovisual signal system for satellite wagering.

**Footnote No. 3**
Sections 19549.3 and 19549.9 authorize the allocation of additional racing days to certain county fairs in the northern zone of the state and to the Los Angeles County Fair.

**Footnote No. 4**
Section 19605.71 prescribes the amounts and distribution of deductions from wagers at satellite wagering facilities in the central and southern zones of the state.

**Footnote No. 5**
Since we find the language of section 19610.3 to be controlling with respect to the question presented, and have found from the legislative histories of sections 19610.4 and 19610.6 that neither of the latter statutes was intended to control the distribution of wagering proceeds from live horse racing meetings pursuant to the provisions of section 19610.3, we need not analyze in detail the provisions of sections 19610.4 or 19610.6.